## THE HAVANA.

TURNER et al. v. THE HAVANA. ROSSMAN v. SAME. ELSESSER v. SAME. WANSER v. SAME. REED v. SAME. ROBERTS v. SAME.

(District Court, S. D. New York. January 25, 1893.)

MARITIME LIEN—REPAIRS AND SUPPLIES — FOREIGN CORPORATION — OWNER— AGENT'S ORDER — CREDIT OF SHIP — ADVERTISING BILLS NOT A MARITIME SERVICE.

The passenger steamboat H. was employed in making daily trips with fishing parties from New York outside of Sandy Hook. She was owned by a New Jersey corporation. The four stockholders resided in New York. The business of the company was done on board the steamer. They had an office in Jersey City for the transfer of stock. Mr. S., one of the stockholders, was vice president of the company and general manager, who ran with the boat on her trips, and ordered, directly or indirectly, all supplies and repairs. The company had no other property, and no reputation or credit. Most of those furnishing supplies supposed Mr. S. to be the master, and all the supplies were furnished on the credit of the ship. *Held,* that the supply men had a maritime lien, excepting a bill for advertising the steamer's excursions in order to get business, which, not being a maritime service, had no lien.

In Admiralty. These were six libels against the steamship Havana to enforce liens for supplies. Decrees for libelants.

Anderson & Howland and Murray, for Turner.
Alexander & Ash, for Reed and Rossman.
Stewart & Macklin, for Wanser and Elsesser.
H. D. McBurney, for Roberts & Bro.
Henry D. Hotchkiss and W. S. Maddox, for the Havana.

BROWN, District Judge. All the above libels were filed to recover payment for supplies of various kinds funished to the steamboat Havana, mostly during the latter part of 1892. The steamer was engaged in the excursion passenger business, making daily trips in taking fishing parties from New York about six or eight miles outside of Sandy Hook. The supplies were all procured directly or indirectly through the orders of Mr. Schrader, who was the general business manager of the vessel, running with the boat upon her trips and attending to all matters of supplies, a part of which were for the restaurant and the refreshments for passengers on the trips.

Prior to March 15, 1892, Mr. Schrader and three others had been owners of the vessel. They all resided then and reside now within the state of New York. In March, 1892, a company was formed for the purpose of taking the ownership of this steamer and of

carrying on the business called the "Liberty Steamboat Company," which was duly organized as a corporation under the statutes of New Jersey, and kept an office in Jersey City for the transfer of stock. On the 15th of March, 1892, the vessel was transferred by a bill of sale to the new company, and Mr. Schrader was made vice president. No other business of the company was transacted in Jersey City, and no other office was maintained by them elsewhere than on board the vessel, except some little use of a desk of one of the four stockholders at his milk shop at Greenpoint. The four former owners took all the stock of the company, and some stock was held by Mr. Schrader down to the time of trial. The company had no other property than the vessel. All its business was transacted within this state, or on the high seas, and the bills in suit were all contracted here.

Upon the above facts it is claimed by the respondent that no maritime lien arises (1) because the vessel was practically a New York vessel; (2) because the bills were not contracted by the master, but by the owner at its usual place of business; (3) that there was no actual credit of the ship.

Without in any degree departing from the views expressed in the case of Stephenson v. The Francis, 21 Fed. Rep. 715, and Neill v. The Francis, Id. 921, which have been repeatedly applied in this court, and which have been recently reaffirmed in the court of appeals, in the case of The Steamship Stroma, 53 Fed. Rep. 281, I am satisfied that those decisions are not applicable to the present case. The doubt expressed by Judge Butler in the case of The Mary Morgan, 28 Fed. Rep. 196, 200, I cannot regard as an open question here, since the decision of the circuit court in this circuit in the case of The Plymouth Rock, 13 Blatchf. 505. The rule is settled here that the residence or domicile of the legal owner controls as to the character of the vessel, whether the owner is an individual or a corporation. In the present case the owner was undeniably a New Jersey corporation.

The evidence leaves no doubt, moreover, that all these bills were contracted upon the credit of the vessel. This conclusion does not rest chiefly upon the fact that the articles were charged to the vessel and owners, but from all the other circumstances as well. The Liberty Steamboat Company had no other property. There was nothing but this vessel to look to. The stockholders were not personally liable. It is plain that none of them contemplated any personal liability. As to some of the bills, Mr. Schrader's testimony expressly disclaims any personal liability. The company itself was scarcely known. Several of the libelants did not even know there was such a company. It had neither name, reputation, or credit with the public, or those furnishing these supplies; and aside from the vessel, as I have said, the company was worthless. The articles, moreover, were all furnished to the vessel directly; and the testimony of all the libelants that they were furnished on the credit of the vessel is corroborated by all the circumstances; and any personal credit of the owner, viz. of the steamboat company, instead of the vessel, was in the highest

degree improbable. It is plain, also, that Mr. Schrader, in ordering the supplies, understood them to be supplied on the credit of the vessel. I cannot, therefore, find otherwise than that the supplies were all furnished on the understanding by both parties, that they were furnished on the credit of the vessel, and not on the personal credit of the company.

The circumstance that the orders for all the articles were given either by Mr. Schrader or under his direction, and not by the master, is not material, for two reasons, viz.: (1) The cases of The Francis, and numerous other analogous cases, in which no presumption of a lien was allowed, were cases in which the dealings were with the owner in person, i. e. either the general owner, or the charterer as special owner. Here the dealings were not with the owner as such, nor even with Mr. Schrader as vice president; but with Mr. Schrader as the agent of the owners, who was on board as manager, and had charge of this department of the ship's business. In that respect the case is like that of The Patapsco, 13 Wall. 329, where the owner was an absent and insolvent corporation, and the supplies were furnished upon the orders of the agent, and not of the owner. Never, so far as I am aware, has a lien been disallowed, or the presumption of a maritime lien refused, for supplies furnished to a foreign vessel simply because they were ordered by the agent of the vessel, instead of the master in person, where the other circumstances of the case have not warranted the inference that a personal credit was intended. Instances of the allowance of such liens in this court have been not infrequent. See The Comfort, 25 Fed. Rep. 158, affirmed Id. 159. (2) Besides this, however, Mr. Schrader in the present case was in fact exercising a part of the master's ordinary functions. While the evidence is not explicit as to the duties which were left to the nominal captain of this boat, it seems probable from what appears that he attended solely to the duties of navigation, or those of a pilot only; leaving to Mr. Schrader the management of all other matters in regard to repairs and supplies, which are usually attended to by a master in a foreign port. In fact, Mr. Schrader, running with the ship, exercised a master's functions to such an extent that he was understood by most of the libelants to be the actual master of the ship, and they supposed they were acting under the master's orders.

As these supplies were plainly not expected by either side to be furnished upon the personal credit of Mr. Schrader, or on the personal credit of the Liberty Steamboat Company, but upon that of the ship, the liens claimed must be allowed as maritime liens. The amounts allowed are as follows:

To Turner, $1,047.45, with interest from December 1, 1892.

To Rossman, $346.56, with interest from December 1, 1892.

The loan by him of $200 to Schrader for the purpose of paying necessary bills for advertising in newspapers the excursions of the steamer, in order to keep up her business, cannot be allowed; because such advertising was not a service rendered directly to or upon the ship, but belonged to that preliminary class of services

rendered wholly on land and not deemed maritime, and hence not giving rise to any maritime lien. See The Thames, 10 Fed. Rep. 848; The Crystal Stream, 25 Fed. Rep. 575; The Paola R., 32 Fed. Rep. 174; Doolittle v. Knobeloch, 39 Fed. Rep. 40; Marquardt v. French, 53 Fed. Rep. 603.

To Elsesser, only the amount accruing since the vessel was owned by the foreign company, viz. $131.98, with interest from May 1, 1892.

To Wanser, $170.40, with interest from December 1, 1892.

To Reed, $184.95, with interest from December 1, 1892.

To Roberts & Bro., $232.47, with interest from December 1, 1892.

Decrees may be entered accordingly, with costs.