## THE NEW BRUNSWICK.

(District Court, D. Massachusetts. October 30, 1903.)

No. 1,394.

1. MARITIME LIENS—HOME PORT OF VESSEL—PLACE OF ENROLLMENT.

Allegations that a Maine corporation, the owner of a vessel, had its principal place of business in Boston, and that the vessel was there enrolled, are not sufficient to show that Boston was the home port of the vessel.

2. RES JUDICATA—SUBSTANTIAL IDENTITY OF CAUSES OF ACTION—ALLEGING DIFFERENT GROUNDS FOR RELIEF.

A decree on the merits dismissing an intervening petition to establish a general maritime lien on a Maine vessel for supplies furnished in Boston is a bar to a second petition to establish a lien for the same supplies, under the statute of Massachusetts, on the ground that she was a domestic vessel because enrolled in Boston, since the subject-matter of the two petitions is the same and the causes of action substantially identical, and under the liberal rules of practice in admiralty both grounds for relief might have been alleged in the first petition in the alternative.

3. SAME—MATTERS CONCLUDED BY JUDGMENT.

Under the American rule the identity of the causes of action in two suits cannot be tested by inquiring whether the same matters might have been proved under the pleadings, but the second suit will be barred if the parties and relief sought are the same and the matters essential to sustain the cause of action alleged might have been proved in the former action under appropriate pleadings.

In Admiralty. On motion to dismiss intervening petition.

Carver & Blodgett, for petitioner.

Arthur J. Selfridge and Wm. Lewis O'Brion, for claimant.

LOWELL, District Judge. Morrison filed an intervening petition against the proceeds of the steamer New Brunswick, alleging that the steamer was of Portland, in the District of Maine, owned by a Maine corporation; that he had supplied her with coal and labor while she was lying at Boston; that she was in need of supplies, and that they were furnished on her credit; that he had duly filed with the city clerk of Boston the statement required by Mass. Rev. Laws, c. 198, § 15. The petition thus appeared to assert a lien of two sorts: First, a general maritime lien; and, second, a statutory lien upon a foreign vessel. The libel was filed before the case of The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770, had appeared in a bound volume of reports. That case decided that the statutory lien does not affect foreign vessels, and so Morrison became limited under his pleadings to the general maritime lien. Near the end of the trial his counsel suggested that the steamer was enrolled in the port of Boston, and might therefore be deemed a domestic vessel. He moved to amend his petition by alleging this, but the motion was denied upon the ground that it came too late, inasmuch as the case had been tried nearly to a conclusion upon the undisputed allegation in his petition that the steamer was a Maine vessel. The court held, on the evidence, that there was no general maritime lien upon the vessel, and dismissed the petition. Thereafter Morrison filed a second petition, which alleged that the New

Brunswick was owned by a Maine corporation which had its usual place of business in Boston, and that the steamer was enrolled in the Boston customhouse; that the coal was needed for the vessel's use, and was supplied to her by the petitioner, who duly filed the statutory statement above referred to, and became entitled to a statutory lien upon the steamer. The claimant has moved to dismiss the second intervening petition upon two grounds: First, that the matter is res judicata; and, second, that the intervener, by filing the first petition, elected to establish his claim as a general maritime lien, and by that election is precluded from claiming a statutory lien.

Is the matter of the second petition res judicata? The time for taking an appeal from the decree upon the first petition has been extended, but no question has been made that the decree is final, nor has objection been made to the form of the claimant's motion to dismiss. The question of the sufficiency of the second petition is squarely presented. Upon precisely what grounds Morrison seeks to maintain this petition is not easy to determine. Its allegations differ from those of the first petition only by the omission of the explicit allegation that the steamer was a Maine vessel, and by the addition of allegations that her owner had its usual place of business in Boston, and that she was enrolled in the Boston customhouse. In the first petition the coal is said to have been ordered by "her master and agent"; in the second by "the agent for the owner," probably the same person. The place of enrollment does not ordinarily determine the home port of the vessel as against the place of the owner's incorporation. The Havana, 64 Fed. 496, 12 C. C. A. 361. There all the business of the corporation, except the transfer of its stock, was done in New York or on the high seas (see The Havana (D. C.) 54 Fed. 201), yet the vessel's home was deemed to be in New Jersey. If the intervener desired to set up that, for the purposes of this case, by reason of estoppel or otherwise, the New Brunswick was to be deemed a Massachusetts vessel, he should have done so directly. He has alleged a statutory lien, but the facts he has set out do not support the allegation. It is doubtful if the allegation just mentioned, unsupported as it is by the facts set out, would bar the petitioner from asserting under his second petition that he has a general maritime lien—the very matter decided upon his first petition. The petition cannot be sustained as for a general maritime lien, for that matter is admitted to be res judicata; nor as for a statutory lien against a Massachusetts vessel, for it contains no sufficient allegation that the vessel's home port was in this state.

Even if the second petition be deemed to allege specifically, as probably was intended—otherwise it must undoubtedly fail—that the New Brunswick was a Massachusetts vessel, the result is the same. The doctrine of res judicata has two applications. In Werlein v. New Orleans, 177 U. S. 390, 397, 20 Sup. Ct. 682, 44 L. Ed. 817, it was said that:

"A former judgment between the parties (or their privies) upon the same cause of action as that stated in the second case constitutes an absolute bar to the prosecution of the second action, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for

that purpose. Where the second between the same parties is upon a different claim or demand, the judgment in the former action operates as an estoppel only as to those matters in issue, or points controverted, upon the determination of which the finding or verdict was rendered."

See, also, Columb v. Webster Co., 84 Fed. 592, 28 C. C. A. 225, 43 L. R. A. 195; Foye v. Patch, 132 Mass. 105, .110. Does the case at bar fall within the first category? Is the cause of action the same? The same supplies were furnished by the same petitioner to the same vessel of the same owner, at the same time and place, in the same manner and with the same need. Nothing has happened or has been discovered since the first petition was filed to affect the rights or relations of the parties. The only difference between the two petitions concerns the home port of the vessel. There is ambiguity, indeed, in the expression just quoted from the decision of the Supreme Court that a former judgment constitutes a bar as to every admissible matter which might have been offered to sustain the demand. The phrase is a common one, and has been substantially repeated in many considered cases. Did the court mean to bar only those matters which might have been offered to sustain a plaintiff's demand under the existing pleadings, or all those matters which might have been offered under appropriate pleadings? If only those matters are barred which might have been offered under the existing pleadings, then the cause of action stated in the second petition here before the court is not the same as that stated in the first. Under the first petition, Morrison was not allowed to show that the New Brunswick was a Massachusetts vessel.

In Hunter v. Stewart, 4 D. F. & J. 168, a bill in equity for the transfer of certain shares of stock was dismissed on the merits. Later the original plaintiff brought a bill for the same relief upon different grounds, known to exist when the first bill was brought. Lord Chancellor Westbury held the former judgment no bar, and said:

"The validity of the defense depends on the inquiry whether the case made by the plaintiff in his present bill be the same with that stated in the former bill, or could have been given in evidence under the allegations which such former bill contained. The conditions necessary for the validity of a defense of this nature are, in my opinion, best collected in a well-known passage from the commentary of Vinnius on the 4th book of the Institutes, and which is in these words: 'Exceptio rei judicatæ non aliter agenti obstat quam si eadem quæstio inter easdem personas revocetur, itaque ita demum nocet, si omnia sint eadem, idem corpus, eadem quantitas, idem jus, eadem causa petendi, eadem conditio personarum.' "

See Paton v. Sterling, Morr. Dic. 12,229. In Herman on Res Judicata, 96, in Chand on Res Judicata, 53, and in Freeman on Judgments, 259, identity of cause of action is tested by the identity of admissible testimony. See Horton v. Bassett, 17 R. I. 129, 20 Atl. 234. Indeed, the English courts have not clearly recognized that the bar of a former judgment is differently limited where the cause of action is the same in the two suits, and where the matter in issue is the same, but the cause of action is different. See Barrs v. Jackson, 1 Phil. 582; Flitters v. Allfrey, L. R. 10 C. P. 29.

Respectable as is the authority in support of the test by identity of evidence, the law has been settled otherwise by the decisions of

the Supreme Court. In Werlein v. New Orleans, above cited, a bill in equity had been brought to enjoin a sale alleged to be illegal because of certain irregularities. The bill was dismissed. Thereafter another bill was brought, with the same parties, to recover the estate in question, on the ground that the land was dedicated to a public use, and so could not be sold. The court held that the matter was res judicata, and said:

"The threatened sale might have been illegal for a number of reasons, based upon widely divergent facts; but whatever those reasons were, the facts upon which they rested were open to proof in the chancery action, and if the city desired the benefit of them they should have been alleged and proved. It would seem to be quite clear that the plaintiff could not be permitted to prove each independent fact in a separate suit. Suppose the city had only set up the fact of the registry. of the judgment as a ground for enjoining the sale, and after a trial on that issue it had been beaten and judgment had gone against it; could the city after that have commenced another suit for the same purpose, and set up as a ground for the alleged illegality of the sale the assignment of the judgment by Klein? In such second action would not the judgment in the prior action conclude the city? If not, then on being beaten on a trial of that issue the city could commence still another action based on the allegation that the judgment had been paid. Thus, as many different actions as the city might allege grounds for claiming the sale would be illegal could be maintained seriatim, and no one judgment would conclude the city, except as to the particular ground upon which the city proceeded in each particular case. And yet all these different grounds would simply form evidence upon which the original cause of action was based, namely, the alleged illegality of the apprehended sale. They would form simply facts upon which the cause of action might rest. There is no difference in the nature of the ground now urged in this case from the other grounds actually set up in the chancery suit." 177 U. S. 399, 400, 20 Sup. Ct. 686, 44 L. Ed. 817.

Like decisions have been reached in the highest courts of many states: Lamb v. McConkey, 76 Iowa, 47, 40 N. W. 77; Sayers v. Auditor General, 124 Mich. 259, 82 N. W. 1045; State v. Brown, 64 Md. 199, 1 Atl. 54, 6 Atl. 172. In Columb v. Webster Mfg. Co., above cited, the acts of negligence alleged in the second declaration could not have been given in evidence under the first. See So. Minn. Ry. Extension Co. v. St. Paul, etc., R. R., 55 Fed. 690, 694, 5 C. C. A. 249. In Clare v. N. Y. & N. E. R. R., 172 Mass. 211, 51 N. E. 1083, the plaintiff had brought suit under the employers' liability act, and the court held in substance that, by a judgment in that suit, he was barred of his common-law remedy, though he might not have been able to obtain that remedy under his original declaration. In Wildman v. Wildman, 70 Conn. 700, 41 Atl. 1, the plaintiff brought suit for the delivery up of deeds alleged not to have been executed or delivered. There was judgment for the defendant, and the judgment was held to bar a second suit for the same relief, based upon an alleged cancellation of the deeds after delivery. The court said:

"If the plaintiff's complaint in the former action was so framed that he could not avail himself of all the evidence which he had to prove his right to recover, and so suffered defeat, it may be his misfortune. By that judgment the plaintiff is bound. He sought an amendment to enlarge the issue, but at so late a stage of the trial that the judge for that reason disallowed the motion. His cause of action had been adjudicated. He cannot now have another trial to enable him to use such other evidence to obtain the same remedy."

Even the English courts have hesitated to allow a plaintiff to bring a second suit for the same relief sought in the first, merely by alleging additional grounds for relief, similar to those alleged in the first suit, yet not strictly admissible under the pleadings therein. Phosphate Sewage Co. v. Molleson, 4 A. C. 801. But in order to bar a second suit in England or Scotland, as it seems, the identity in the cause of action must be more complete than is required for the same result by most courts in the United States.

In his first petition, Morrison alleged that the New Brunswick was a Maine vessel. This was not disputed, and was material to his case, as he understood it. There is here no question of mere variance in the proof of a fact not material to the maintenance of the suit. To permit a plaintiff to seek the same relief regarding the same subject-matter by several actions, each setting up a different ground for relief, is to give a plaintiff an advantage over a defendant. A. sues B. for breach of contract under seal. B. has three defenses—invalidity, performance, and satisfaction. If he sets up only one defense and fails, he cannot, in general, avail himself thereafter of the others in defense to the action. Why should B. be able to bring three successive bills in equity for a cancellation of the contract, each upon one of the grounds mentioned? That the same rule should be applied to those matters which sustain and to those which defeat a demand is implied in the first extract from the opinion in Werlein v. New Orleans, above quoted. That there is an essential difference in this respect between the situation of plaintiff and that of defendant was asserted, indeed, by Lord Campbell in McDonald v. McDonald, 1 Bell, App. 819, 829, but the Supreme Court must be taken to have disapproved the doctrine of the House of Lords in the last-named case.

While rejecting the test of identity of testimony, it must be admitted that the courts of this country have proposed no applicable test to take its place. Identity of relief is not an adequate test. In suits upon several coupons, for example, the relief sought is identical, but the causes of action are not the same. A prior judgment does not bar all demands which might have been prosecuted in the first suit without misjoinder. As was said in Werlein v. New Orleans, the "proper application" of "the law in relation to the effect of a judgment between the same parties" "to particular cases is sometimes difficult to determine." The substantial identity of two causes of action differently expressed is deemed within the direct knowledge of the court from the circumstances of the case, without need of canons of distinction. This is not altogether satisfactory, but is perhaps unavoidable. Here it is sufficient to say that the causes of action stated in Morrison's two petitions are nearer identity than causes of action hitherto deemed to be identical by courts of authority.

It was argued that the second petition can be maintained because otherwise there might be a failure of justice. A petitioner may be in real doubt about a vessel's home, and may conceive that he has a valid lien upon her in either case—a general maritime lien if she be a foreign vessel, a statutory lien if she be domestic. But both these contentions can be joined in one libel or petition. The forms of

pleading in admiralty are unusually liberal and free from technicality. If the libelant has a good cause of action upon one or other of two theories practically inconsistent, and he is doubtful which theory is correct, he may, with proper allegations, plead in the alternative. The cause of action in the second petition, so far as one is set out, was heard and determined upon the first petition, and cannot be litigated again.

Petition dismissed, with costs.