**BURDINE et al. v. WALDEN.**

**No. 8442.**

Circuit Court of Appeals, Fifth Circuit.

Aug. 5, 1937.

**322**

Herbert S. Sawyer, of Miami, Fla., for appellants.

James H. Willock, of Miami, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

William F. Walden, appellee, filed this suit in rem against the yacht, Atlantan, to recover wages of $175, for one month, for services as master, together with subsistence at the rate of $1.50 per day, less a credit of $16, and for $58.33, double wages for a period of ten days, under the provisions of 46 U.S.C.A. § 596. The vessel was claimed by W. M. Burdine, appellant, and released on a stipulation for value. There was judgment for libelant in the sum of $219.64, which included interest, and for costs, but rejecting the demand for double wages. This appeal followed.

The record supports the following conclusions as to the material facts: The Atlantan was designated as a Wheeler cruiser, 58 feet long. Her home port was Miami, Fla. She was purchased by J. J. Kinney, and by verbal agreement Walden was employed by him as master, at the rate of $175 per month, from March 9, 1936. It was contemplated that after the termination of the usual school term the vessel would be used by Kinney to take his wife and children from Miami by easy stages to somewhere on the Great Lakes and that Walden's job would last throughout the summer. The term of employment was otherwise indefinite. At that time the boat was out of commission and laid up in the harbor at Miami. Walden was put on board in charge of her by Kinney. On March 18, 1936, Kinney sold the vessel to W. M. Burdine, appellant. Negotiations for the sale were conducted through W. R. Setzler, a broker. A check for the purchase price was turned over to Kinney by Setzler and Kinney gave Setzler a check for $47.50 to pay Walden for services performed up to that time, Setzler agreeing that Burdine would continue to employ Walden. Setzler was not authorized by Burdine to make this agreement. He discussed the matter with Burdine, who declined to employ Walden. The check for $47.50 was not delivered to Walden. An unsuccessful effort was made to deposit the check in court, and the record does not show that the tender was ever completed by a deposit of the amount in money. The ship's papers were on board the yacht with Walden's name inserted as master. After Walden was advised of the sale, by Setzler, he delivered the papers to the proper officer at the customhouse and new papers were made out with Burdine's name inserted as master. The yacht did not leave the dock while owned by Kinney. On March 21, Walden was asked to take the boat out to view a regatta. He did so, then departed from her on a speed boat, and thereafter did not return to her. He was paid $20 by Burdine for his services for the three days he was on the boat after her purchase by Burdine and accepted it.

█ Libelant contends that while designated as master he was in fact the whole crew and was entitled to a lien under the general admiralty law. It is well settled that the master of a vessel is not entitled to a lien for his wages. The Steamboat Orleans v. Phoebus, 11 Pet. 175, 9 L.Ed. 677. We entertain no doubt that Walden was employed as master. For the contemplated voyages a crew of more than one man would be needed with a licensed navigator in command. It may be conceded that if a seaman performs services on a vessel of a nature that would usually entitle him to a lien for wages, the fact that he is improperly designated as master or captain will not deprive him of the lien. That does not help libelant in this case. The yacht was out of commission and laid up in her home port. She did not depart from the wharf while owned by Kinney and the services rendered by libelant during that period were merely those of a watchman. It is also well settled that he would not be entitled to a lien in admiralty for the services he rendered in these circumstances. Jenkins v. Rancocas Const. Co. (C.C.A.) 61 F.(2d) 96.

██ The District Court allowed the lien under Florida statutes, section 5368, C.G. L.1927, which provides that there shall be

a lien in favor of any person performing for himself or others any labor of any kind on, to, or for the use or benefit of a vessel, including masters, mates, and members of the crew. Of course, where a state law allows a lien maritime in nature admiralty will enforce it. The J. E. Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L.Ed. 345. Apparently, the Supreme Court of Florida has not had occasion to construe section 5368. Appellant cites a number of decisions construing other lien statutes, which hold that the lien must be restricted to the payment for labor actually performed and does not cover damages for breach of contract. It is unnecessary to review these decisions.

We consider that under the plain provisions of the law a lien is granted only for the amount earned for labor actually performed or services actually rendered, and does not cover wages for future services, although the claimant might be entitled to recover them in a suit in personam.

 Appellant relies upon Florida statutes, section 5380, subdivision b, C.G.L. 1927, which provides that there shall be no lien upon personal property against purchasers without notice unless the person claiming the lien be in possession of the property upon which the lien is claimed. In this regard it is contended that the lien was lost when libelant surrendered possession of the yacht, which was before the libel was filed. It is fundamental that admiralty liens do not depend upon possession of the thing for their enforcement. The Rock Island Bridge, 6 Wall. 213–215, 18 L.Ed. 753. There is nothing in section 5368 that could be construed to require the lienor to retain possession of a vessel to preserve his lien. Manifestly, where a number of men claim a lien on the same boat it would be impossible for each of them to do so. Nor do we think section 5380 applies in this case. Burdine was not a purchaser without notice. He was charged with knowledge that at the time he acquired the yacht Walden had been employed as her master and had not been paid for his services while the boat belonged to Kinney.

 We agree with the District Court that libelant was entitled to recover the amount agreed upon for subsistence. It is customary for the officers and crew to be furnished subsistence when a vessel is in commission and that necessarily enters into compensation for services. Since there was no cook on board, and no stores were furnished by the owner, it was proper that Walden should be given an allowance for his meals, which in this case was reasonable. We also agree in the rejection of the demand for double wages. However, the judgment is excessive. Libelant was entitled to recover wages at the rate of $175 per month and subsistence at the rate of $1.50 per day for the time he was actually employed on the boat, less what he had been paid on account, but no more. He was not entitled to recover in a proceeding in rem against the vessel, in the hands of a new owner, for his unearned wages and subsistence, notwithstanding failure to so pay him may have involved a breach of contract on the part of the former owner who employed him.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion, costs of the lower court to follow judgment and costs of appeal to be divided equally between appellant and appellee.