## SWIFT v. KNOWLES.
### No. 8878.

Circuit Court of Appeals, Fifth Circuit.

Jan. 17, 1939.

James A. Dixon and H. Reid De Jarnette, both of Miami, Fla., for appellant.

Roger Edward Davis, of Miami, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

John S. Swift, the owner of motorboat 18-K-528, employed Lloyd Knowles about Oct. 30, 1937, to work on and about the boat. On Feb. 15, 1938, Swift directed Knowles to wash the former's automobile, which Knowles refused to do, claiming it was not within his employment. Swift paid him off and discharged him. Knowles libelled the motorboat for his wages accruing subsequently, and on April 29, 1938, obtained a decree for them figured to Oct. 30, 1938, less what Knowles had earned since his discharge in another continuing employment up to the date of the decree. Swift has appealed, and has applied to take additional evidence in this court to show what Knowles earned between the date of the decree and October 30, 1938.

From the findings of the District Judge it seems that he regarded the contract of employment to be founded on a letter from Swift to Knowles, dated Oct. 9, 1937, which Knowles in his libel asserted to be the contract. It reads thus: "I talked again with Mr. Ezzell, and after the conversation I came to this conclusion, and following is my proposition: $175.00 per month salary. This is on a year around basis. When you are away from Miami I, of course, will take care of your meals. At the end of the year, if everything has been to my satisfaction, I will be glad to pay you a bonus not to exceed $300.00. You will take care of the boat and devote your whole time to the job." Swift claiming the motorboat by his answer denied that this was the contract, admitted the discharge, and sought to justify it. Swift and Knowles were the only witnesses heard. Swift testified to an oral employment in Miami about the last of Oc-

tober of Knowles as a handyman about Swift's winter home there, to include service on the boat. He said he wrote the letter of Oct. 9, but never received any reply, and the letter was not before them at the time of contracting, and concluded thus: "The terms of employment were discussed at the house after she (Knowles' wife) looked over the house. I said: 'I will give you $150.00 per month and give you this house furnished.' The proposition in the letter about $175.00 per month was a different proposition entirely than what we talked about at the house. He started to work at $150.00 per month and I furnished him a house. I just proposed the $175.00 a month, but it was never accepted. Nothing was said about the duration of the employment, as long as he was satisfactory. There was no conversation about the time of his employment at all." Knowles in testifying produced the letter, but did not claim it was the contract or was the basis of it. He said: "I never answered that letter. Mr. Swift came down and talked to me sometime the latter part of October. I did not answer the letter. * * * At that time we came to an agreement what I was to receive, and the agreement was I was to be captain of the boat while it was in commission. When I talked with him on the 30th of October he told me that what he wanted was a person to take care of his lawn, take care of his automobiles, take care of his boat, and take care of any other mechanical devices around the house that needed attention, but not while the boat was in commission. I agreed to take care of the lawn in the summertime when the boat was put up, when I did not have to work on the boat. I agreed to take care of the place and the grounds at that time, but not while the boat was in commission." "Nothing was said definitely concerning how long the boat would be laid up each year. As far as I can recollect, It was to be laid up sometime in May as I understand, but nothing was said. I just understood it that way." The judge asked Knowles in what way the agreement he and Swift had was altered from what the letter says, and he answered that he was to have the house and $25 less; it was the same as paying $25 back for the house; and added, the change further was "in effect that when the boat was out of commission, when it was in storage base, I would agree to stay on the place and look after it in the summertime." He at no time said the letter was referred to in agreeing with Swift.

▇ We are of opinion that the letter when its offer was not accepted fell out of the negotiations, and is not shown to constitute the contract or any part of it. The variance is of no moment, however, in admiralty. The agreement as proven by Knowles himself was for service on the boat only until sometime in May, and when the boat should be laid up he was to be caretaker of the premises of Swift on land. The care of the automobiles during the winter may well be considered as a mere incident to his main employment about the boat, so that the contract for winter employment was essentially maritime; and we will not disagree with the trial judge that the care of the automobiles was as to their mechanical condition and did not include washing the car, so that a discharge in February for not washing it was unjustified. We cannot, however, agree that a maritime contract for the period of a full year is proven. The maritime service was to end when the boat should go out of commission and into storage in May, and since Knowles, having the burden, has fixed the period no more definitely, we must set it down as May 1st. After that date no certain period of employment was agreed on, and the nature of the employment was not to be maritime at all. The wages for that employment should not have a maritime lien upon this vessel.

▇ The appellant contends that there is only a single contract for an employment partly maritime and partly not, and that admiralty has no jurisdiction at all to enforce it. See 38 C.J., Maritime Liens, § 24, citing The Saginaw, D. C., 32 F. 176; The James T. Furber, D. C., 157 F. 126. We think that without too great strain it can be held that for the definite period to end when the vessel should be laid up in May there was a contract for maritime employment which can be enforced against the vessel, but for no longer. Whether there was also an enforceable contract for a land service to begin thereafter we need not enquire, for a court of admiralty has no concern with it.

▇ Knowles speaks of himself as captain, but it appears that he was the crew also. A true master has in the United States no lien for his wages, but Knowles, constituting the entire crew of this small boat, as crew may claim one.

We set aside the decree as made, and adjudge that Knowles is entitled to recover salary at $175 per month (considering the

use of the furnished house to be worth $25 per month) from Feb. 15th, 1938, to May 1st, 1938, less $125 earned elsewhere, with interest to date. The application to take further testimony touching later earnings is denied. The appellant is entitled to costs of appeal, but the libellant recovers costs of his libel. A decree may be prepared accordingly.