**COLONIAL PRESS OF MIAMI, INC.,**
Appellant,

v.

**THE British Motor Vessel ALLEN'S CAY** her engines, tackle, apparel, equipment, etc., Appellee.

No. 17998.

United States Court of Appeals
Fifth Circuit.

April 20, 1960.

Melvin T. Boyd, T. J. Blackwell, Blackwell, Walker & Gray, Miami, Fla., for appellant.

Henry W. Clar, Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The only difficulty about this case is how one so simple could have become so snarled up. See Indemnity Ins. Co. v. Browning-Ferris Machinery Co., 5 Cir., 227 F.2d 804, 806. A libel in rem is filed

and the vessel seized. Without stipulation for value, costs, or a writ of release from the warrant of seizure, the ship, of foreign registry, sails merrily on her way. A default decree is entered and on a hearing ostensibly to fix the amount, the Judge decides the merits, holds no lien ever arose, and dismisses the libel. A writ of restitution is issued and a marshal's fee is assessed for executing the writ respecting a vessel long since vanished commanding restoration to those who took her away.

■ The whole thing started very simply. Libelant, a printing company, filed a libel in rem against the British M/V Allen's Cay. The libel alleged, under oath as required, that the printing company "did furnish and supply to the * * * Allen's Cay * * * certain printing material which was contracted for by the master of the vessel * * * Carl Stewart." Invoices, incorporated by reference, were annexed as exhibits and the amount due was specified to be $986.-09. On the face of the verified libel, this stated a valid claim for a maritime lien. The materials supplied were of a kind which could come within "other necessaries" of the Maritime Lien Act, 46 U.S.C.A. § 971. See Atlantic Steamer Supply Co. v. The SS Tradewind, D.C.D.Md.1957, 153 F.Supp. 354, 1957 A.M.C. 2196. They were ordered by one—the master of the vessel—whom the statute designates as a person "presumed to have authority from the owner to procure * * * other necessaries for the ves-

sel." 46 U.S.C.A. § 972. And until there is a proper denial with supporting proof to the contrary, the presumption is that the goods were furnished on the credit of the vessel. Findley v. Lanasa, 5 Cir., 1960, 276 F.2d 907; Point Landing, Inc. v. Alabama Drydock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 867, 1959 A. M.C. 148, 156–157.

While the M/V Allen's Cay was still under the marshal's arrest, Carl Stewart, named in the libel as master, attempted as a self-described Claimant to file a so-called exception.[1]

Stewart, however, had not filed a sworn claim as required showing how or in what capacity it would "claim" the vessel or on whose behalf.[2] Neither had he filed any stipulations either for costs or to abide decree. The District Judge declined to permit the filing of this ambiguous paper.

Long after time for filing claim or answer and subsequent to the publication of the monition, libelant moved for the entry of a default decree. The Court on February 17, 1959, entered a default decree in the customary form[3] ordering a further hearing to be held "at which time the libelant is required to offer proof of the amount due to the libelant."

Then came the hearing on the amount of the claim. Confusion was now even more compounded. The vessel had left. There was still no sworn claim, stipulation for costs or to abide decree or writ of release. The hearing was convoked

1. It contained two grounds: (1) libelant corporation was not a Florida corporation and presumably had no right to maintain a suit; (2) the matters were non-maritime in nature.

2. Supreme Court General Admiralty Rules, Rule 25, 28 U.S.C.A. Published in 5 Knauth's Benedict on Admiralty, 50, 58 (7th ed.). Benedict points out the substantive importance of this. "All parties who thus intervene to defend the suit are bound, in the first place, to make their claim to the property, or, in other words, to state their interest in it, that the court and the libelant may know whether, and to what extent, they have a right to defend the suit, for it

is quite as important to the cause of justice that the libelant's rights should not be impaired by the unauthorized meddling of those who have no interest as that the claimant's rights should not be impaired by not allowing him to defend them in his own name." 2 Benedict on Admiralty § 324 at 436.

3. The default decree found "that no claim of owner or answer [has] been filed." After formally entering the defaults of all persons, it further "Ordered, that a further hearing be held on March 16, 1959 * * * at which time the libelant is required to offer proof of the amount due to the libelant."

pursuant to a default decree still outstanding and not then, or ever, attacked. Yet appearing was an attorney asserting to act as proctor on behalf of this same Carl Stewart.

The Court over protest of libelant permitted cross examination of libelant's witness by this proctor acting as friend-of-Stewart, not friend-of-the-court. This cross examination, reflected by like legal arguments in the appellee's brief before us, was not the least concerned with the dollar amount. The whole emphasis was to prove that the master (Stewart) did not order the printed material and they were not delivered to the vessel, but were rather delivered to an advertising agency.

■ We do not evaluate that evidence as it bore on these contentions, for these were matters foreclosed by the default decree. We would merely mention that in those contentions and the proof developed to support them, the case has another one of its curious peculiarities so characteristic of it generally. The facts, it was asserted, would show that the Allen's Cay was under charter with Stewart as the master. The printing was ordered from libelant by an advertising agency. But Stewart's deposition, offered on that point by libelant, was emphatic that Stewart had authorized the advertising

agency to procure these printed materials. There was no effort to show that by the terms of the charter party between owner and charterer, neither the charterer nor Stewart as the charterer's master had authority to incur liens. Nor was there any suggestion, either then or since, that Stewart as master lacked authority. As master, he was one with presumed authority under 46 U.S. C.A. § 972, and even though "appointed by a charterer" he had like authority under § 973.[4] The duty of inquiry, Tampa Ship Repair & Dry Dock Co. v. Esso Export Corp., 5 Cir., 1956, 237 F.2d 506, 1957 A.M.C. 102, presupposes that inquiry would have revealed lack of authority. No such evidence was offered and, on the contrary, Stewart was emphatic that what the advertising agent did in procuring the printing was authorized. The act was the master's as much as though he had to put in the order himself.

■ But the simple short of it is that such questions had been foreclosed by the default decree.[5] "The default of itself establishes the libelant's right to recover * * *." 2 Benedict on Admiralty § 317 at 422 (6 Ed.) We need not determine whether the Court might, or could have set it aside, or what showing would have been required to do so.[6]

4. § 973. Notice to person furnishing repairs, supplies, and necessaries

"The officers and agents of a vessel specified in section 972 of this title shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." 46 U.S.C.A. § 973.

5. "It is not necessary for the libelant to prove a *prima facie* case but the default establishes the case." 2 Benedict § 313 at 416 (6th Ed).

6. See Supreme Court General Admiralty Rule 28 published in 5 Knauth's Benedict, see note 2, supra, at 59. This provides: " * * * But the court may set aside the default and upon the application of the respondent or claimant admit him to make answer to the libel on such terms as the court may direct."

Rule 39 expressly covers reopening of default decrees and limits the time to sixty days after the default decree has been entered:

"The court may, in its discretion, on motion of the respondent or claimant and the payment of costs, rescind the decree in any suit in which, on account of his contumacy and default, the matter of the libel shall have been decreed against him, and grant a rehearing thereof at any time within sixty days after the decree has been entered, the respondent or claimant submitting to such further orders and terms in the premises as the court may

So long as it stood—and it still stands—the libelant was not required to offer further proof on the existence and validity of the maritime lien. The sole question libelant should have been required to meet was the *amount*. The libel was essentially one for a stated account, and this question was then the simple one of the amount of the invoices less any payments or credits.

This is not to urge a procedural strictness so out of character with the liberal approach of the admiralty. What occurred here proves its substantial wisdom. What was thought to be a simple inquiry into dollars to be charged and dollars paid turned into a general investigation of circumstances surrounding the whole transaction, much of it involving the actions and authority of a person (Stewart) no longer within the United States, and hence unavailable either for investigation or as a witness. Fundamental fairness required that if such issues were still lurking undetermined in the case, libelant should have had a reasonable warning so that available evidence could be marshaled.

The libelant came prepared, as it was entitled to do, to make a limited showing. It made that. With the default decree then, and still, outstanding, the District Court was required on that showing to enter a decree for libelant. The action of the Court in entering a further decree of dismissal was erroneous and must be vacated with a decree here rendered for the libelant.[7]

Reversed and rendered.

direct; and the term of the court shall be deemed extended for this purpose until the expiration of such period of sixty days." 5 Benedict supra at 66.
Cf. Afghan Motor Company v. The M. V. Silverash, D.C.S.D.N.Y.1942, 46 F.Supp. 306, 1942 A.M.C. 1084.

Benedict points out that "after the period prescribed by the rules has elapsed, the court has no power to open or rescind the decree in default cases, the power of the court to open a final decree entered on default thus differing from its power to open a final decree entered on the merits. * * *" 2 Benedict § 314 at 419 (6th Ed). And even if

timely made, the accepted practice is that such applications "to open defaults should be made on affidavit showing merits, reasons for the default and grounds for opening it, and should be brought formally before the court on order to show cause or motion * * *." 2 Benedict supra at 419.

7. The evidence showed that of the amount billed and sued for, $986.09, the engraving cost had been paid direct by the agency. This leaves the net sum of $728.73 owing. To this will be added, of course, costs both here and below including proctor's docket fees and for printing of briefs. 28 U.S.C.A. § 1923.