Captain Tom BARBER, Appellant,

v.

The MOTOR VESSEL "BLUE CAT", a 32' Catamaran, her engines, apparel, tackle and equipment et al., Appellees.

No. 23182.

United States Court of Appeals.
Fifth Circuit.

Jan. 31, 1967.

Gary P. Eidelstein, Miami Beach, Fla., for appellant.

James L. Hurley, Frank J. Marston, Miami, Fla., for appellees, Fowler, White, Gillen, Humkey & Trenam, Miami, Fla., of counsel.

Before BROWN, GEWIN and GOLD-BERG, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

■ A case simple in setting, small in amount, has become complicated and the subject of much judicial travail—with now more to come—because of two factors. The first is that the Libelant, or more likely his first proctor who since withdrew, became mesmerized by the title "Master" in describing the status of the Libelant seeking a lien for wages. The second is that the Trial Court forgot the lesson so often brought home by us that at this day and time dismissal of a claim—land-based, waterborne, amphibious, equitable, legal, maritime, or an ambiguous, amphibious mixture of all of them, Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F.2d 696, 1963 AMC 355, on the basis of the barebone pleadings is a precarious one with a high mortality rate. Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264, esp. n. 1.[1]

The libel was brought by "Captain Tom Barber" against the BLUE CAT. How unlike such a person might well be from one who as "Lord of the Quarter deck" is master of all he surveys, Avera v. Florida Towing Corp., 5 Cir., 1963, 322 F.2d 155, 1963 AMC 2110; United Geophysical Co. v. Vela, 5 Cir., 1956, 231 F.2d 816, 819, 1956 AMC 745, is revealed by the libel's captions description of the BLUE CAT—"a 32′ catamaran." The libel then alleged that Captain Barber "was engaged as captain" at a minimum specified salary. But after exceptions to the original libel on the ground that the Master had no lien were sustained, the amended libel added much. "Further" it alleged, Barber "was engaged to ferry the vessel from Galveston * * * to Miami, Florida * * *." It then went on to assert that under his arrangement with the vessel owner, Barber at the request of the "vessel, her master, agent, owner, representative or the person or persons to whom the management, custody or control of said vessel"[2] had been entrusted, had "furnished * * * services, materials, supplies [and] labor" for and to the vessel in the value of $2,766.50 as detailed in the annexed bill of particu-

1. To the cases listed in Millet, a hurried check of the annotations reveals that the following should be added to the tally: Brunswick Corp. v. Vinberg, 5 Cir., 196.., 370 F.2d 605 (Fla.) [No. 22907, . . . . . . . . . .]; Due v. Tallahassee Theatres, Inc., 5 Cir., 1964, 333 F.2d 630 (Fla.); City of Fort Lauderdale v. East Coast Asphalt Corp., 5 Cir., 1964, 329 F.2d 871 (Fla.), cert. denied, 379 U.S. 900, 85 S.Ct. 187, 13 L.Ed.2d 175; Shull v. Pilot Life Ins. Co., 5 Cir., 1963, 313 F.2d 445 (Fla.); Santiesteban v. Goodyear Tire & Rubber Co., 5 Cir., 1962, 306 F.2d 9 (Fla.); Brotherhood of Railroad Trainmen v. Central of Georgia Ry. Co., 5 Cir., 1962, 305 F.2d 605 (Ga.); Arthur H. Richland Co. v. Harper, 5 Cir., 1962, 302 F.2d 324 (Fla.); Smoot v. State Farm Mut. Automobile Ins. Co., 5 Cir., 1962, 299 F.2d 525 (Ga.); Fitzpatrick v. Commonwealth Oil Co., 5 Cir., 1960, 285 F.2d 726 (Tex.); Mannings v. Board of Public Instruction, 5 Cir., 1960, 277 F.2d 370 (Fla.); Buras v. Timolat, 5 Cir., 1960, 275 F.2d 797 (La.), cert. denied 364 U.S. 879, 81 S.Ct. 167, 5 L.Ed. 2d 101; Mitchell v. E-Z Way Towers, Inc., 5 Cir., 1959, 269 F.2d 126 (Fla.); Black v. First National Bank, 5 Cir., 1958, 255 F.2d 373 (Ala.); Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690 (Fla.); Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780 (Ala.); Dotschay v. National Mut. Ins. Co., 5 Cir., 1957, 246 F.2d 221 (Fla.); Seaboard Finance Co. v. Martin, 5 Cir., 1957, 244 F.2d 329 (La.). See also Moritt v. Fine, 5 Cir., 1957, 242 F.2d 128, 132 (dissent).

Distinguishable, but not far removed, are those instances of reversals where the Trial Court rendered summary judgment on the barebones pleadings. Demandre v. Liberty Mut. Ins. Co., 5 Cir., 1959, 264 F.2d 70 (La.); Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F. 2d 139 (La.); Fowler v. Southern Bell Telephone & Telegraph Co., 5 Cir., 1965, 343 F.2d 150 (Ga.). Under the "spell of local state practice," Arthur H. Richland Co. v. Harper, supra, 302 F.2d at 326, the mortality rate in Florida appeals still runs high. Of the cases previously and herein listed reversed since 1938 for improvident orders dismissing complaints for failure to state a claim, cases from Florida still represent about 50% of the total (16 of 30). See Moritt v. Fine, supra, 242 F.2d at 132 n. 2 (dissent).

2. This is a substantial paraphrase of §§ 972, 971 of the Maritime Lien Act, 46 U.S.C.A. § 971 et seq.

lars. The "Bill of Particulars" listed 67 specific occasions between fitting out at Galveston on December 4, 1963, and the last item on February 28, 1964, subsequent to arrival of the vessel in Miami, Florida, on January 7, 1964.[3]

In a record which contains naught but the amended libel, the categorical exception that "as captain, libelant has no maritime lien for services performed *while acting in that capacity*" (emphasis added) and the unrevealing order of dismissal [4] with no reported colloquy of the argument to indicate whether the Trial Court ever considered the numerous cases which do allow some liens despite the title "Master," we have to assume that the Judge thought it was a case of all or none so far as Barber's own labors were concerned.

■ And herein lies the error. For in a variety of situations, the cases, many of them ancient, recognize that this much-criticized prohibition of a lien to the Master for wages [5] has its own ameliorations. Where the so-called "Master" or "Captain" performs work which is essentially that of a crew member, deck or engine room, and now the shore-based Sieracki-Ryan-Yaka vicarious seamen, Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 344, 1966 AMC 2223, he is not denied the protection of security which Mr. Justice Gray, in the plagiaristic tendencies of Judges echoing the salt water extravagance of Sir William Scott, later Lord Stowell, described as "sacred." [6]

■ Thus, as though written about Barber and the BLUE CAT, Judge Sibley declared that "Knowles speaks of himself as captain, but it appears that he was the crew also. A true master has in the United States no lien for his wages, but Knowles, constituting the entire crew of this small boat, as crew may claim one." Swift v. Knowles, 5 Cir., 1939, 100 F.2d 977, 978, 1939 AMC 148. Indeed, we have sounded the same theme. Burdine v. Walden (The Atlantan), 5 Cir., 1937, 91 F.2d 321, 322, 1937 AMC 1149; see also Rathbun v. Halvorson (The Patsea), 5 Cir., 1960, 181 F.2d 57. The right to the security of a lien for wages for services which are the equivalent of a crewman's labor is the thing which gives the claim and the claimant the character, and "their real character is a question of fact." Collyer v. S.S. Favorite, S.D.N.Y., 1939 AMC 1015. See Norris, Seamen § 449 at 470 (2d ed. 1962). The fact that a person is described or describes himself or signs ship's papers as "master" is not conclusive as to his status as a seaman. Wandtke v. Anderson, 9 Cir., 1934, 74 F.2d 381, 1935 AMC 130; Matter of Southern Pac. Golden Gate Ferries, N.D. Calif.S.D., 1942, 1942 AMC 1581, 1585; Owen v. United States, S.D.N.Y., 1945, 1945 AMC 595; Vlavianos v. The Cypress, 4 Cir., 1948, 171 F.2d 435, 439, 1949 AMC 9.

Indeed, in the Shipowner's brief, which itself is remarkable for its failure to cite a single case or undertake to distinguish

---

3. Itemized with evidential detail, these showed by date and place the number of hours spent by Barber in performing a variety of specific jobs including: fitting out, repairing engines, renewing valve cover gaskets, cleaning fuel filters, repairing fuel lines, power steering, replacing fuel filters, repacking stuffing box, cleaning, sanding decks, hull and bulkhead, removal and renewal of all outside varnish and other tasks totaling 503 hours at the specified rate of $5.50 per hour as the equivalent of the usual rate for shipwright or engine mechanic.

4. The Trial Court did allow recovery of $150 paid by Barber as wages to a seaman hired by him.

5. See Gilmore & Black, Admiralty § 9–20 at 513, n. 88, and The Mariner, D.C. Mass., 1924, 298 F. 108, 1924 AMC 882; Norris, Seamen § 449 (2d ed. 1962).

6. See Gilmore & Black, Admiralty § 9–20 at 514, quoting from The John G. Stevens that claims for seaman's wages are "sacred liens, and, so long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages." 1898, 170 U.S. 113, 119, 18 S.Ct. 544, 547, 42 L. Ed. 969, 972; Norris, Seamen § 298 at 336 n. 6 (2d ed. 1962).

any of these,[7] there is an apparent acquiescence in their complete correctness. Perhaps this is a key to what went on below. For the brief states, "In passing it should be mentioned that" a number of cases hold "that the mere fact that one is designated as a master does not automatically preclude a right to a lien upon his vessel for wages." Offering the only distinction, the brief goes on, "However, it should be noted that in those cases the foregoing rule of law was pronounced following a trial on the merits of the case and involved instances wherein the particular claimant involved did perform services of a nature other than those ordinarily and customarily performed by masters of vessels. In other words, the Court looked beyond the mere designation or title of master and adjudicated liens when services were performed in some other capacity." But how does a Libelant get a trial on the merits to establish these facts when the libel is dismissed on the shipowner's exceptions? With the liberality of the admiralty which presaged that of the Civil Rules which have now become the new dispensation, 39 F.R.D. 73 (1966), the least one can expect is that the libel, amplified by the detailed Bill of Particulars covering Barber's own activities, would be read in the light of Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

To dismiss the libel with prejudice was to go too fast too soon. As with nearly every one of these situations, the Trial Court failed to require the parties to exploit the marvelous tools now available by summary judgment or otherwise[8]

to demonstrate whether the facts, as distinguished from what the lawyers said the facts would be, would bear out a claim and if so to what extent. Tyler v. Peel Corp., 5 Cir., 1967, 371 F.2d 788. Now a year and a half later, the case must go back to decide whether such facts exist as to a claim that arose in 1963.

Reversed and remanded.

---

7. Giving tit for tat, a Big Roland for a Little Oliver, S.S. Bethflor v. Thomas, 5 Cir., 1966, 364 F.2d 634, 635 n. 5, we can readily understand why so little heed may have been paid to Barber's brief. The quotations from cases though never distorting the substance of the Court's holding are inaccurate, contain words that cannot be found and far too much are that abomination of appellate advocacy the quotation of a "headnote" as though it were the words of the Court. A headnote is, of course, an indispensable and

valuable tool for purposes of legal research, but it is ordinarily not what the Judge said, but rather a condensed, concise version of what the Editor understood the Court to hold, say, or both.

8. Admiralty R. 30A (Depositions), 31 (Interrogatories), 32 (Discovery), 32B (Request for Admissions), 58 (Summary Judgment), 28 U.S.C.A. (1950, supp. 1966); cf. F.R.Civ.P. 26, 33, 34, 36, 56, the corresponding rules of civilp rocedure now applicable in admiralty proceedings. 39 F.R.D. 73 (1966).