**STERN, HAYS & LANG, INC.,**
Appellant,

v.

**M/V NILI, her engines, tackle and appurtenances, et al., Appellees.**

**No. 24990.**

United States Court of Appeals
Fifth Circuit.

Feb. 19, 1969.

Rehearing and Rehearing En Banc
Denied May 6, 1969.

Raymond T. Greene, Harvey I. Reiseman, Miami, Fla., for appellant.

Richard F. Ralph, Eugene C. Heiman, Richard E. Reckson, Miami, Fla., for appellees.

Before BROWN, Chief Judge, CLAYTON *, Circuit Judge, and SCOTT, District Judge.

JOHN R. BROWN, Chief Judge:

On an expensive record of 162 printed pages, which contains much interesting, but unnecessary, information, as one sees the State of Israel put its financial imprimatur on the construction and financing of an Israeli merchantman, contracts with British shipbuilders for her construction and with Scottish bankers for her financing, and a bareboat—sometimes referred to as a "bear" boat—charter between the Israeli corporation as shipowner and a New York corporation as charterer, the overture to what we have here is best described in the opening three lines of appellant's brief. What passes for confusion in later aspects is characterized there by very, very guarded intimations which the italics reveal—no one knows, or at this stage has even the remotest idea what the facts

---

* Judge Clayton, the third Judge of this panel, participated in the hearing and the decision of this case. The present opinion is rendered by a quorum of the Court pursuant to 28 U.S.C.A. § 46, Judge Clayton having taken no part in the final draft of this opinion.

are: "The Israel cruise ship M/V NILI while operating out of the Port of Miami in November, 1966, *apparently* developed certain financial problems including an *alleged* failure to make payment against an *alleged* maritime mortgage." This is just about as factual as anything becomes.

The M/V NILI, owned by Car Ferries,[1] was chartered—or so uncontradicted photostats reflect—to Arison[2] under a charter which, to expand the interesting irrelevancies for this stage, had a pretty positive lien prohibition clause. Trouble set in, and trouble spelling money as it often does, the State of Israel, as some kind of a mortgage lender, found the United States Courts an effective resource for settling at least this mild international financial crisis between this sovereign, her corporate subject, a ship of her flag, and such flotsam creditors of all nations as might follow in M/V NILI's wake.

One of these was the present pursuing appellant—an advertising agency who had a commitment with Arison, whom appellant thought to be the Israeli corporation's agent, but who turns out perhaps to be more of an operating charterer. With the ship thoroughly seized by Israel's libel of foreclosure and generally under a series of plasters of intervening and hopeful creditors, the orders of consolidation confected a glorious Donnybrook Fair, with each turning on the other as he felt the exigencies of the moment warranted.[3]

By complaint and amended complaint, signed by counselors invoking the cherished title of proctor and consequently possessed of all the detailed allegations of a former libel, the creditor sued the M/V NILI *in rem*, her owner Car Ferries (note 1, supra), and Arison (note 2, supra) as agent—each *in personam*.[4] Admiralty, as well as diversity, jurisdiction (well in excess of $10,000) was expressly invoked.

Acting from that premise of self-preservation which characterizes all nations and nationals, the State of Israel, apparently apprehensive that American maritime liens might eat up the mortgage security ostensibly offered by its corporate national, lashed out against each who claimed or looked as though he might claim a sou, pound, or dollar. This sovereign therefore moved to dismiss the claim. This was done.[5]

■ Perhaps the case is an unwashed blessing of integration of admiralty and the civil rules.[6] For to the esoteric legends of salt water litigation must now be added such prosaic concepts as those of Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and of our own Barber v. M/V "BLUE CAT", 5 Cir., 1967, 372 F.2d 626, all of which add up on land, shore, or water as proof that dismissal on pleadings is precarious, and the probability is high that such dismissal will hit a strand here.[7]

---

1. Nili Somerfin Car Ferries, Ltd., an Israeli corporation.

2. T. Arison & Co., Inc. expressly alleged to be a New York corporation.

3. Not the least of the incongruities is the help tendered the creditor from the unusual quarter of the charterer. Frankly acknowledging that success against the *res* (proceeds after sale) will save a few of its own planks, the charterer argues better than anyone else that advertising productivity gives rise either to a maritime lien or a right to participate in surplus proceeds.

4. All questions of the shipowner's amenability to *in personam* process are obviated by a sweeping power of attorney given to its counsel, Irving M. Wolff, to accept service, file claims, etc. Whether any judgment *in personam* would ever arise against Israel is unimportant, since the contest here is the right to latch on to proceeds.

5. After a little pleading history, the District Court's order was an unilluminating one which simply declared that the complaint was dismissed "for failure to present a claim cognizable in Admiralty and under the Maritime Jurisdiction of this Court."

6. See F.R.Civ.P. 1, 28 U.S.C.A. (Supp. 1968), 39 F.R.D. 73 (1966) and the "Supplemental Rules for Certain Admiralty and Maritime Claims," 28 U.S. C.A. (Supp.1968), 39 F.R.D. 146 (1966).

7. Many have been added to the recent score in Blue Cat, 372 F.2d at 627. See e. g., Banco Continental v. Curtiss Nat'l Bank, 5 Cir., 1969, 406 F.2d 510; Mizell v. North Broward Hosp. Dist., 5 Cir., 1968, 392 F.2d 580, 581; Bobby Jones Garden Apartments, Inc. v. Suleski, 5

■ Things move too fast, too much happens in this sometimes mixed up world of ours for Judges to have some sort of perpetual claim on insight into business affairs for them to transport an ancient case [8] from 1893 down to 1967 or 1969 as a kind of deliverance that advertising once held not to give rise to a lien could never do it now. As we have recently held, printing can—or at least may—be sufficient. Colonial Press of Miami, Inc. v. The Allen's Cay, 5 Cir., 1960, 277 F.2d 540, 1960 AMC 1598. If the printing may be a service or supply furnished to the vessel under the Maritime Lien Act,[9] then the direct labor in determining what is to be printed in the copy differs only as "a matter of degree." J. Ray McDermott & Co. v. Offshore Menhaden Co., 5 Cir., 1959, 262 F.2d 523. Indeed, so vital may be advertising for cruise ships that the Federal Government engages in its regulation. See 46 U.S.C.A. § 362(b).

■ But our decision does not float or ground under such decisive currents. In many respects Israel's commencing a mortgage foreclosure invited a concursus in which at this day and time the disposition will be to let the Chancellor stride the quarterdeck to transport into the Admiralty all of the Court's equity powers.[10] It is far too early to tell whether, under the Florida Lien Act[11] or, more likely, under usual principles of non-maritime creditors participating in surplus proceeds generated by maritime liens,[12] this creditor can qualify.

■ And, finally, there is an outright express claim for an amount well in excess of $10,000 between the creditor, identified as a resident of Florida, and Arison, the charterer, a New York corporation. The melding of the civil with admiralty does more than obliterate the cherished hoary title of proctor. It invests the Judge with all of the statutory powers, whether their genesis be formerly at law, in equity, or in admiralty.

What will come of this only the facts will tell. It now goes back two years later to find out what they are.

Reversed and remanded.

## PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

We find no merit in the petition for rehearing. Concerning the importance and direct relation of advertising literature, in the cruise trade to the Congressional view of safety at sea for passengers, see Nicholas J. Healy 3d, Admiralty & Shipping, 1968 Annual Survey Am.L. 575.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

Cir., 1968, 391 F.2d 172; Barnes v. Merritt, 5 Cir., 1967, 376 F.2d 8; United States v. Mike Bradford & Co., 5 Cir., 1967, 375 F.2d 765; Molnar v. Gulfcoast Transit Co., 5 Cir., 1967, 371 F.2d 639, 640, 1967 AMC 1926.

8. See, so pressed by Israel, "The Havana," S.D.N.Y., 1893, 54 F. 201, aff'd, 2 Cir., 1894, 64 F. 496; Atlantic Steamer Supply Co. v. The S.S. Tradewind, D.Md., 1957, 153 F.Supp. 354.

9. 46 U.S.C.A. §§ 971–975.

10. See Compania Anonima Venezolana de Navegacion v. A. J. Perez Export Co., 5 Cir., 1962, 303 F.2d 692, 1962 AMC 1710, cert. denied, 1962, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276; Hadji-

pateras v. Pacifica, S.A., 5 Cir., 1961, 290 F.2d 697, 1961 AMC 1417.

11. F.L.S. §§ 85.01 and 85.11. No holding on enforceability or validity is intimated. See Gilmore & Black, Admiralty, pp. 526–537.

12. See the two appeals in "The Lottawanna," 1873, 87 U.S. (20 Wall.) 201, 22 L.Ed. 259; 1874, 88 U.S. (21 Wall.) 558, 22 L.Ed. 654; Judge (later Justice) Brown's opinion in "The Trenton," E.D. Mich., 1880, 4 F. 657, 664; "The Duchess," E.D.N.Y., 1912, 201 F. 783; Gilmore & Black, Admiralty, p. 649; Jackson v. Inland Oil & Transport Co., 5 Cir., 1963, 318 F.2d 802, 1963 AMC 1355.