## THE COMMACK.

(District Court, S. D. Florida. September 30, 1925.)

No. 1932.

1. **Maritime liens** ⊚�613⟶4—**Services and supplies furnished vessel on order of master after seizure held not "maritime liens."**

Services and supplies furnished vessel, on order of master, after seizure of the vessel, on word of master and his expectations of what owners would do, *held* not to constitute "maritime liens," notwithstanding ignorance of lienors that vessel had been attached.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maritime Lien.]

2. **Maritime liens** ⊚⟶4—**Maritime lien not affixed to vessel after seizure under process.**

Neither the master, owner, nor marshal can affix a maritime lien to any vessel after seizure under process.

3. **Maritime liens** ⊚⟶37—**Maritime liens settled by payment in inverse order of their acquisition.**

Maritime liens are settled by payment in the inverse order of their acquisition; liens acquired during latest voyage being settled before liens of same class acquired during prior voyage.

4. **Maritime liens** ⊚⟶37—**Maritime liens of the same voyage are paid pro rata, if fund is not sufficient to pay them in full.**

Maritime liens of the same voyage, except as to seamen's wages, etc., are paid pro rata, in event that the fund is not sufficient to pay them in full.

5. **Maritime liens** ⊚⟶4—**Money advanced to pay wages of seamen and stevedores, earned before seizure of vessel, and supplies furnished before that date, will be allowed as maritime liens.**

Money advanced to pay wages of seamen and stevedores will be allowed as maritime liens for such sum as was advanced to pay wages earned before seizure of vessel, as well as supplies furnished before that date.

In Admiralty. Libel by the W. S. Jordan Company against the schooner Commack, etc., with an intervention by the Jacksonville Tent & Awning Company and others. On exceptions to report of commissioner. Exceptions sustained in part.

See, also, 3 F.(2d) 704.

Cooper, Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., for libelant.

Lee Guest, of Jacksonville, Fla., for interveners Jacksonville Tent & Awning Co. and others.

Doggett, Christie & Doggett, of Jacksonville, Fla., for interveners Soule and Doane Towboat Co.

Charles E. Pelot, of Jacksonville, Fla., for intervener Mallard-Simcox Co.

Fred B. Noble, of Jacksonville, Fla., for intervener Seminole Forwarding Co.

George C. Bedell, of Jacksonville, Fla., for intervener Jacksonville Forwarding Co.

Axtell & Rinehart, of Jacksonville, Fla., for intervener Germain Co.

CALL, District Judge. On June 2, 1924, W. S. Jordan Company filed a libel against the schooner Commack, upon which process of attachment and monition was issued. The attachment, shown by the return of the marshal, was served the same day by taking possession of the vessel and placing a custodian in charge. The monition was published the same day, requiring all persons in interest to appear June 16th.

Many interventions were filed, setting up claims against said schooner, some for services, etc., rendered before the voyage during which she was seized, and some for services, etc., rendered during the voyage, before and after she was seized by the marshal. On June 24th an order of sale pendente lite was passed by the court, and the vessel sold by the marshal on July 14th for $7,000. The sale was confirmed July 19th, and this fund, less the marshal's costs and the amounts allowed and paid the seamen, remains in the registry of the court for distribution, and is not sufficient to pay all claims in full. In this condition the matter was referred to a commissioner to take testimony of parties and report the priorities of the claimants. This report was made and filed on August 3, 1925. Exceptions to the commissioner's report were filed by Jacksonville Tent & Awning Company, Jacksonville Ship Chandlery Company, Fred Angerholzer, and the St. Johns Bar Pilot Association, represented by Mr. Guest, and by the libelant, also Bernstein & Jacobson, Inc., William H. Porter, Central Wharf & Towboat Company, A. W. Frost & Co., Inc., the Atlantic Works, represented by Cooper, Knight, Adair, Cooper & Osborne, and T. H. Soule, Doane Towboat Company, and Charles C. Hutchinson, represented by Doggett, Christie & Doggett. The claims of the libelant and interveners total some $13,000, while the fund to be distributed is less than $7,000.

The commissioner in his report designates certain priorities, as follows:

(1) Jacksonville Tent & Awning Company, May 18, 1924, $850.20; June 25, 1924, $983.52; May 31, 1924, $3.

(2) Jacksonville Forwarding Company, May 26, 1924, $216.90.

(3) Fred Angerholzer, June 11, 1924, $21.

(4) Mallard-Simcox Company, June 3, 1924, $608.18.

(5) St. Johns Pilot Association, May 26, 1924, $22.35.

(6) Seminole Forwarding Company, June 11, 1924, $321.25.

(7) Jacksonville Tent & Awning Company, June 11, 1924, $139.43.

(8) Mallard-Simcox Company, June 7, 1924, $402.23.

(9) W. S. Jordan Company, April 24, 1924, $811.11.

(10) Portland Sailmaking Company, April 24, 1924, $437.93.

(11) Bernstein & Jacobson, April 23, 1924, $316.93.

(12) Central Wharf & Towboat Company, April 22, 1924, $65.

(13) T. H. Soule, April 18, 1924, $279.34.

(14) Doane Towing Company, September 1, 1923, $157.07.

(15) Charles C. Hutchinson, March 4, 1923, $78.20.

(16) The Atlantic Company, June 1, 1923, $1,150.75.

(17) A. W. Frost Company, December 31, 1923, $7,704.05.

(18) Germain Company, April 8, 1924, $4,198.

The exceptions filed by the second class of interveners mentioned above are directed to the amounts allowed interveners which accrued for services and supplies, etc., furnished subsequent to the attachment of the vessel by the marshal. The first-class interveners excepting is to the date from which interest is allowed on one item and to certain other allowances.

[1, 2] The contention of the second class of exceptions is that the amounts allowed and excepted to for services and supplies furnished after the seizure of the vessel are not maritime liens, and the payment of them must be postponed until all maritime liens entitled to participate in the fund are paid. This contention is well taken. There can be no doubt that services and supplies furnished the vessel on the order of the master or owner after the seizure of the vessel are not maritime liens. The two cases relied upon to bring the interveners within what is claimed as the exception to this rule do not, in my judgment, bring them within the exception. In this case there was no act of libelant which induced the interveners to expend the labor or furnish the supplies to the vessel, but according to my reading of the testimony they were furnished upon the word of the master and his expectations of what the owners would do. The order of the

court allowing the vessel to be moved from one dock to another was obtained upon the representations of the master of what he expected the owners to do.

Some reliance seems to have been placed upon the ignorance of the interveners that the vessel had been attached, but this, it seems to me, is not sufficient to mature their claim into maritime liens, and the acts of the master cannot raise an equity in favor of the interveners, entitling them to postpone the payment of interveners who under the admiralty law are entitled to maritime liens. The acts of interveners might have this effect, but not those of the master, owner, or officers of the court. The principle is well settled, it seems to me, that neither the master, owner nor marshal can affix a maritime lien to any vessel after seizure under process. If the seizure was merely colorable, a different rule would be applied, because a court of admiralty administers the equities between the different claimants to the funds. In this case the seizure was not colorable, but was actually supplied with a keeper aboard. I know of no principle of law which makes it the duty of the custodian to notify parties dealing with the master that he is custodian, and in the absence of such notice the claims for services rendered or supplies furnished become maritime liens, or entitled to payment in priority to maritime liens.

[3-5] It is equally well settled that maritime liens are settled by payment in the inverse order of their acquisition; the maritime liens acquired during the latest voyage being settled before liens of the same class acquired in prior voyages. It is also well settled that maritime liens of the same voyage, except as to seamen's wages, etc., are paid pro rata, in the event that the fund is not sufficient to pay them in full. The question of seamen's wages has been eliminated from the consideration of this case; they having been paid from the funds. There is a claim by one of the interveners for money advanced to pay seamen. This amount should be allowed for such sum as was advanced for this purpose to pay the wages of seamen earned before the seizure, as well as supplies furnished before that date. The same thing applies to the stevedores.

The exceptions to the report of the commissioner will be sustained as to exceptions 1, 2, 3, and 4 of the exceptions filed by the libelant, and the matter re-referred to the commissioner, to report upon the claims in conformity with this opinion, and the evidence taken before him in support thereof.