**RUBIN IRON WORKS, Inc., v. JOHNSON et al.**

**RUESGA et al. v. SAME.**

**No. 8804.**

Circuit Court of Appeals, Fifth Circuit.
Jan. 11, 1939.

872

George C. Bedell, Chester Bedell, and Harry W. Reinstine, all of Jacksonville, Fla., for appellant, Rubin Iron Works, Inc.

Walter F. Rogers, of Jacksonville, Fla., for cross-appellants, R. Ruesga and G. A. Dias.

Frank F. L'Engle, Martin H. Long, Louis S. Joel, J. T. G. Crawford, and Philip S. May, all of Jacksonville, Fla., for appellees and cross-appellees, Harold A. Johnson and others.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

FOSTER, Circuit Judge.

These appeals are from a decree ranking liens and distributing the balance of a fund in the registry of the court derived from the sale of a vessel under a writ of venditioni exponas. The vessel was sold for $39,000. After paying costs and undisputed claims, by agreement of all parties, a fund of approximately $32,000 was left for distribution. The claims of Rubin Iron Works, Inc., appellant, Harold A. Johnson and wife, appellees, and Ruesga and Dias, cross appellants, exceed that amount. They will be discussed in the course of the opinion. The material facts appearing from the record are as follows.

Harold A. Johnson was the master and owner of record of the British steamship, Belize, a vessel of some 1498 gross tons, registered in her home port of Nassau, Bahama Islands. On November 7, 1936, Johnson entered into a written agreement with R. Ruesga to sell the vessel to him for $25,000, as the agent of a then undisclosed principal, which later proved to be Navieros Unidos S. A., a Mexican corporation. The

Belize was dry docked and inspected by Ruesga and accepted. She required extensive alterations and repairs to fit her for the trade into which the purchaser intended to put her. Ruesga made arrangements with Rubin Iron Works, Inc., to do the work. Before the work was begun the following letters were exchanged between Ruesga, Johnson and Rubin Iron Works. They were actually written on January 5 and 6, 1937, but were erroneously dated December 5 and 6, 1937.

"Rubin Iron Works, Inc., Jacksonville, Fla.

"Gentlemen: In consideration of the fact that you are authorized to do certain repairs to the S. S. 'Belize' now in Jacksonville, Florida, by myself namely Mr. R. Ruesga, I personally will be responsible for payment of said repairs to you. I also hold a telegram from the Mexican Government & buyers to the effect that payment for the vessel as well as repairs will be made before sailing of the S. S. 'Belize' from this port.

"R. Ruesga".

"Mr. Harold Johnson, Master S. S. 'Belize', Jacksonville, Fla.

"Dear Sir: In consideration of a letter signed by Mr. R. Ruesga which states he will be personally responsible for the payment of the repairs on the S. S. 'Belize' we hereby agree to hold him responsible for same and agree not to hold the vessel for payment until you have been paid in full for said vessel by the Mexican Government and owners.

"Rubin Iron Works, Inc.,
"By J. L. Stevens, Treas."

"Mr. R. Ruesga, Jacksonville, Fla.

"Dear Mr. Ruesga: I hereby notify you that with this date January the 6th, 1937, I have delivered you for repairs the S. S. Belize that I sold you for your buyers in Mexico, pending the payment agreed of the said vessel as soon as repairs are completed, also I estate that I am the only one owner of the said steamer and she is free of any legal or Private liens to same.

"Yours very truly,
"Harold Johnson, Owners and Captain S. S. 'Belize.'"

After the exchange of these letters the ship was delivered by Johnson to Ruesga and by him to Rubin Iron Works and alterations and repairs were begun. At the same time Ruesga employed Johnson as master and the entire crew of the Belize to remain on the vessel and assist in the work of repairing her, Ruesga agreeing in writing to personally pay their wages and for their subsistence. The work of alteration and repair continued for some time and was then stopped, the purchase price of the vessel not having been paid and Rubin Iron Works not having received anything on account.

On January 28, 1937, Rubin Iron Works filed a libel in rem against the Belize claiming a lien for $13,833.35, for work done to date and for materials assembled to complete the job. She was seized under admiralty process. Cameron and Barkley Co. filed an intervening libel claiming a lien for materials furnished the vessel and used in repairing her, amounting to $578.-53. On July 7, 1937, Johnson claimed the vessel as owner but did not give a stipulation for her release. He applied for the appointment of appraisers by the court. Appraisers were appointed and valued the ship at $6,000. Ruesga filed an intervening libel, claiming $8,750 for materials furnished and for money paid for wages and subsistence of the crew. T. G. Dias filed an intervention claiming wages as a seaman for five months at the rate of $150 per month, a total of $750. Various material men and the crew also filed intervening libels. On September 9, 1937, Lilla Johnson, wife of Harold A. Johnson, filed a petition asking to be decreed one-half owner of the Belize. Subsequently, by agreement between her and her husband her interest was fixed at one-third.

Ruesga's principal declined to complete, the purchase at private sale but offered to bid $39,000 for the ship, if sold under admiralty process, in order to free her of liens and give a good title, and deposited that amount in escrow to guarantee the bid. By agreement of all parties the ship was then sold by the marshal for that amount and was bought in by Rubin Iron Works as trustee for Navieros Unidos S. A.

The District Court found that Ruesga advanced approximately $1400 for the purpose of paying the crew, who were working for him, and $60 a week for food and extra help; that Ruesga was not entitled to a maritime lien against the vessel for this money as he was not a third party but was the prospective owner who had employed the crew and the monies furnished by him were in conformance with his agreement with Johnson and not on the credit of the vessel.

As to the claim of Dias the District Court found that he was Ruesga's employee and not Johnson's.; that he was sent aboard to supervise the work of Johnson's crew; and that his contract was with Ruesga individually and not with the ship; and that.it was contemplated that Ruesga would employ him as master when the repairs were completed but he rendered no service of a maritime nature at all.

On the claim of Cameron & Barkley Co. the District Court found that that company furnished materials on Ruesga's orders for installation in the vessel, aggregating $538.95; that Johnson advised Cameron & Barkley Co. that he would not be personally responsible for this material and did not want it furnished on the credit of the vessel; that Cameron & Barkley's representative told Johnson the material was being furnished to the vessel on the order of Ruesga on the credit of the vessel and her owners and that Cameron & Barkley Co. would look to the owners of the vessel for payment; that Johnson did not countermand the orders nor refuse to permit delivery of the material.; that Cameron and Barkley had previously furnished to the vessel material aggregating $39.54 on Johnson's order.

As to the claim of the Rubin Iron Works the District Court found that the work and materials were furnished to the vessel with Johnson's knowledge and acquiescence but pursuant to the letter from Rubin Iron Works to Johnson, above quoted.

On the above findings the District Court held that neither Ruesga nor Dias was entitled to a maritime lien; that Cameron & Barkley Co. was entitled to a maritime lien against the vessel in the sum of $578.53, with interest, superior to the rights of Johnson and his wife but inferior to the lien of Rubin Iron Works; that Rubin Iron Works was entitled to a maritime lien against the vessel for $13,883.35, superior to the lien of Cameron & Barkley Co. but inferior and subordinate. to the claims of Johnson and wife, for the purchase price of the vessel in the amount of $25,000, which should be paid less deductions as follows; claim of Cameron & Barkley, amounting, with interest, to $624.73; claim of Dantzler Lumber & Export Co., previously paid, amounting to $219.18; and deducting from the share of Lilla Johnson amounts previously advanced to her. A decree was entered accordingly

and also approving the payments of claims, costs, etc., previously made.

On the appeal, in substance, the contention of Rubin Works is that it is not bound by its letter as it was contingent on the original contract of sale, which was never completed, and its claim should be paid in full ahead of the Johnsons.

While the Johnsons have not filed a cross appeal, they contend in brief and argument that the work done by Rubin Iron Works was entirely on the credit of Ruesga and created no lien on the vessel at all. They make the same contention as to the claim of Cameron & Barkley Co., except as to the small amount of $39.45, which is admitted. They further contend that by the exchange of letters Rubin Iron Works waived any lien against the vessel in any event and, in the alternative, they assert that if the lien was not entirely waived it was postponed, which would have the same effect, as a lien postponed can never be reinstated. On these contentions they claim the entire balance of the fund in court as owners of the vessel.

Numerous authorities are cited by counsel for both Rubin. Iron Works and the Johnsons in support of their contentions but it would serve no good purpose to review them as the facts may be distinguished and they are not controlling in this case.

■ We concur in the findings and conclusions of the District Court as to the claims of Ruesga and Dias and may affirm them without further discussion. We also concur in the conclusions of the District Court allowing liens against the vessel in favor of Rubin Iron Works and Cameron & Barkley Co.

■ The vessel was delivered by Johnson to Ruesga and was in his possession as an agreed purchaser, as agent for his principal. She was not in commission and there is no doubt the work and materials furnished were necessary to make the vessel seaworthy and fit her for her first voyage in the new trade. Under the plain provisions of the statute, Act of June 5, 1920, 46 U.S.C.A. § 971 et seq.; both Rubin Iron Works and Cameron and Barkley Co. were entitled to an admiralty lien, to be paid out of the proceeds of her sale.

However, we do not agree with the conclusions of law of the District Court respecting the ranking of liens as to the claims of Cameron & Barkley Co., Rubin

Iron Works and the Johnsons. The District Court gave no reasons for ranking the claim of Cameron & Barkley Co. as inferior to that of the Rubin Iron Works and, so far as we have been able to discover, the record does not show any facts tending to support that conclusion.

There is much conflict in the earlier decisions as to the ranking of admiralty liens, mostly resulting from individual opinions of the judges without regard to uniform jurisprudence. The general rule is that successive liens of material-men are to be given priority in inverse order. The John G. Stevens, 170 U.S. 113-119, 18 S.Ct. 544, 42 L.Ed. 969. This applies to a ship engaged on a voyage during which she touches successively at different ports where the liens accrue. Here all the liens accrued practically at the same time in the same port. It is generally held that liens of the same class accruing in the same year are given equal rank. The Fort Gaines, D.C., 24 F.2d 438. And claims of material-men for supplies and repairs to fit a ship for the same voyage are also given equal rank. The Brimstone, 2 Cir., 69 F.2d 106. This rule has heretofore been recognized in the Southern District of Florida. The Commack, D.C., 8 F.2d 151. Both of these exceptions would apply to the facts in this case. Moreover, there was no occasion to give priority to any of the liens of material-men as the fund in court was sufficient to pay all of them in full.

While it would have been better practice to file a cross appeal, we may consider the contentions of the Johnsons as the trial is de novo on appeal. Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520. Courts of admiralty apply equitable principles to subjects within their jurisdiction and in distributing funds in their custody may give effect to equitable claims. U. S. v. Cornell Steamboat Co., 202 U.S. 184, 26 S.Ct. 648, 50 L.Ed. 987.

Neither Rubin Iron Works nor Cameron & Barkley Co. had a claim to be enforced in personam against Johnson but both had valid liens of equal rank against the vessel to be enforced in rem. Johnson also had an equitable lien on the vessel for the unpaid agreed purchase price, inferior to valid maritime liens for supplies. However, it was clearly the intention of Rubin Iron Works that its claim should be subordinate to Johnson's and that he should be paid $25,000, the agreed purchase price of the Belize, before any lien of Rubin Iron Works should be enforced against her.

The contention of Rubin Iron Works that its agreement to subordinate its claim to Johnson's was abrogated by the subsequent proceedings is without merit. The purchaser was bound to pay that amount and for the repairs and alterations ordered by it. The agreement of all parties to sell the ship under the writ of venditioni exponas at an agreed price must be considered as carrying out the original contract for the sale of the ship. Had she been sold without the agreement to bid $39,000 it is doubtful that she would have brought more than her appraised value of $6,000. As it turned out all parties were greatly benefited. When the ship was sold under valid order in a proceeding in rem Johnson had an equitable lien by preference over Rubin Iron Works for $25,000 but no more.

For the reasons above stated it follows the decree should be amended so as to pay the claim of Cameron & Barkley Co. out of the fund except as to the amount of $39.54. After that the Johnsons should be paid in full the sum of $25,000 less the amount of $39.54, due Cameron & Barkley Co., the claim of Dantzler Lumber Co., as to which no objection is made, and the various amounts advanced to Mrs. Johnson, to be deducted from her share. The balance of the fund to be then paid to Rubin Iron Works. As thus amended the judgment does substantial justice and it is affirmed. Costs of appeal to be divided equally between appellant and cross appellants.