Donald L. ROBERTS and Roswell I. Sawyer, Appellants,

v.

Hans C. T. ECHTERNACH, Appellee.

No. 19159.

United States Court of Appeals Fifth Circuit.

April 27, 1962.

W. F. Parker, Miami, Fla., for appellants.

Irving Yelen, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The difficulties in this small case are traceable largely to confusion, avoidable in part to be sure—perhaps unavoidable to an extent. We emphasize this at the outset as a sort of caveat that this case is unique, and is not to be understood as laying down any new principles, or extending or restricting those of long standing.

The confusion commences in the beginning. The cause was brought as a typical petitory or possessory libel in rem.[1] In the libel the libelant,[2] whom we shall indiscriminantly call the Charterer, claimed to be the demise charterer of the M/V NUESTRA SENORA DE LA MERCEDES, a fishing vessel. A copy of the charter party was annexed to the libel, and without a doubt it gave requisite dominion over the vessel to constitute a bare boat charter giving rise, in turn, to the right to a possessory writ against the vessel in a libel in rem.

In brief it was alleged (and never really denied) that the Owner[3] and Charterer, on March 14, 1961, entered into the bare boat charter for a period of six months from the time of delivery of the vessel in a seaworthy condition at a charter hire of $1,000 per month. Subsequently the Owner instructed the Charterer to put the vessel in ship-shape. The funds thus spent by the Charterer were to be applied against charter hire imposed by the terms of the charter party. Pursuant to these instructions, the Charterer spent over $4,000. But before the vessel could begin operations, the Owner sold it to the present Claimants,[4] who thereafter took possession of the vessel and refused to honor the charter party of which they had direct knowledge. Though constructed as a traditional possessory libel seeking the necessary writs from the admiralty court for recovery of possession, the libel added an extraordinary paragraph. It alleged that the Charterer "expressly reserves the right to file libels in rem and in personam against the [vessel] for foreclosure of any and all maritime liens acquired by the libelant."

With no formal amendments to the libel, the case proceeded to trial on its merits, at which time quite a different sequence of events was portrayed. The

1. For classic forms of petitory or possessory libels see 2 Benedict, Admiralty § 275 (6th ed.), Form Nos. 88, 87, 89, 90; the nature of his jurisdiction of admiralty is discussed at 1 Benedict, §§ 73, 74, at 153–59; see also General Admiralty Rule 19, 28 U.S.C.A.

2. Hans C. T. Echternach, who is the appellee here.

3. The Owner was Jose Martin Hernandez. He does not appear as a party, either as respondent or claimant.

4. The Claimants, appellants here, are Roswell I. Sawyer and Donald L. Roberts.

proof showed that it was in February 1961, preparatory to the charter, rather than in March after the execution of the written charter party, that the Owner instructed the Charterer to do the work necessary to put the vessel in a condition to satisfy the warranties of seaworthiness called for in the written charter. The trial Judge expressly credited this account. After a great deal of repair and outfitting work was done under this agreement, the Owner sold the vessel to the Claimants. Before the Claimants purchased the vessel, however, they were informed emphatically by the Charterer of the existence of the charter party. This was quite enough to warrant the implied inference that they were aware that the Charterer was claiming the right to the use of the vessel. Without resolving this competitive right to possession of the ship and without a single word of evidence indicating any inquiry from the Owner concerning the Charterer's rights, the Claimants closed the trade and shortly took the vessel away. Indeed, they did not on the trial, nor do they here, undertake to defend on the ground that the Charterer had no right to possession under the charter party, or that any such rights had been lost by non-compliance with its terms (such as failure to repay the first and last month's charter hire).

Their attack here is based on a twofold assertion as to why it is impossible to accept the trial Court's finding that the Owner had requested the Charterer to do this work on the vessel. Both are actually intertwined, and both fall when the nature of the transaction for repair and outfitting is properly analyzed. The first is that a charterer, as such, does not by virtue of his possession and operation of the vessel generally have authority to acquire a lien in his own behalf. The second is that the charter party admittedly contained the typical prohibition-of-liens clause.[5]

■■ We can accept the first proposition generally. See Rubin Iron Works, Inc. v. Johnson, 5 Cir., 1939, 100 F.2d 871, 874, 1939 A.M.C. 27; and Challenger, Inc. v. Durno, 5 Cir., 1955, 227 F.2d 918, 920, 1956 A.M.C. 111, as to analogous situations. But this disregards what was done here as found by the Court. This is not the situation of a charterer, by virtue of his possession and dominion, claiming to have the right to acquire a lien in his own behalf. It is a simple case of an owner of a vessel expressly requesting that another (the prospective charter) do work of a kind which would normally give rise to a maritime lien. 46 U.S.C.A. § 971. The second is answered in substantially the same terms. The prohibition-of-liens clause, note 5, supra, does not undertake to deal with the power of the owner himself to subject his vessel to maritime liens. Indeed, the circumstances in which the owner could restrict his own power are severely limited and one could safely say, never to permit the owner, as such, to obtain any advantage. That clause, and the two

5. "13. Neither the Charterer nor the Master of the vessel shall have any right, power, or authority to create, incur, or permit to be imposed upon the vessel any liens whatsoever except for crew's wages and salvage. The Charterer agrees to carry a properly certified copy of this Charter Party with the ship's papers, and on demand to exhibit the same to any person having business with the vessel which might give rise to any lien thereon, other than liens for crew's wages and salvage. The Charterer agrees to notify any person furnishing repairs, supplies, towage, or other necessaries to the vessel that neither the Charterer nor the Master has any right to create, incur, or permit to be imposed upon the vessel any liens whatsoever except for crew's wages and salvage. Such notice, as far as may be practicable, shall be in writing. The Charterer further agrees to fasten to the vessel in a conspicuous place and to maintain during the life of this Charter, a notice reading as follows: " 'This vessel is the property of Jose Martin Hernandez. It is under Charter to Hans C. T. Echternach and by the terms of the Charter neither the Charterer nor the Master has any right, power, or authority to create, incur, or permit to be imposed upon the vessel any liens whatsoever except for crew's wages and salvage.' "

sections of the Maritime Lien Act [6] upon which it operates, has to do with the power of others—the master, agent, charterer, etc.—to subject the vessel to liens for work done by third parties at the request of those presuming to speak for the ship.

There is thus no conflict between the terms of the charter party as a written contract and the prior agreement by which the Owner, instead of calling on others to do the work necessary to put the vessel in shape to satisfy the warranties made by him, requested the Charterer do it instead. Nor is there any question about the written contract superseding the prior agreement or a merger of the two. The written contract does not undertake to cover these matters.

■■ That leaves only the contention that there was no adequate showing that the work was done on the credit of the vessel. This seems to be advanced in such complete indifference to the express terms of the Maritime Lien Act as to suggest that its existence was unknown. The notion that the credit of the vessel was not involved was perhaps induced by some testimony of the Charterer indicating that the total amount of such charges which could be credited against prepaid charter hire was subject to a specific dollar limit. The trial Court was entitled,

of course, to consider this and other factors, but it was not such as to compel a finding of waiver of a maritime lien as a matter of law. The work being that of a kind giving rise to a lien, ordered by the one person—the Owner—who had unlimited authority, the burden was on the party resisting the lien—here the Claimants—to establish that the work was not done on the credit of the ship.[7] Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 867, 1959 A.M.C. 148; Colonial Press of Miami, Inc. v. The Allen's Cay, 5 Cir., 1960, 277 F.2d 540, 541, 1960 A.M.C. 1598; Findley v. Lanasa, 5 Cir., 1960, 276 F.2d 907, 1960 A.M.C. 1444.

The case turned finally on credibility choices. The Charterer testified to the express request by the Owner that the work be done. The Owner never appeared as a party or as a witness to refute this. Of course the Claimants, as witnesses, could not. The Claimants have failed in their burden of demonstrating that such fact findings were clearly erroneous. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, 1954 A.M.C. 1999. And accepting, or acquiescing in, such fact findings, the appeal likewise fails as to the so-called points of law.

Affirmed.

---

6. Section 972 first prescribes the persons who have presumptive authority. "The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. * * *." 46 U.S.C.A. § 972.

Section 973 then gives statutory vitality to special contractual limitations upon the authority of such persons.

"The officers and agents of a vessel specified in Section 972 * * * shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." 46 U.S.C.A. § 973.

7. The statute was intended to, and did, work a significant change in the law. Section 971 provides:

"Any person furnishing repairs, supplies, towage * * * or other necessaries, to any vessel, * * * upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel * * * and it *shall not be necessary to allege or prove that credit was given to the vessel.*" (emphasis supplied) 46 U.S.C.A. § 971.