Leonard **CHITTY**, as owner of the M/V TIDE LAND, Plaintiff-Appellant-Cross Appellee,

v.

The M/V **VALLEY VOYAGER**, her engines, tackle, apparel, etc., in rem, and Mississippi Valley Barge Line Company, in personam, Defendants-Appellees-Cross Appellants.

No. 26489.

United States Court of Appeals
Fifth Circuit.

March 25, 1969.

Alfred M. Farrell, Jr., Benjamin W. Yancey, New Orleans, La., for appellant; Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., of counsel.

N. B. Barkley, Jr., New Orleans, La., for appellees; Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., of counsel.

Before THORNBERRY and DYER, Circuit Judges, and FISHER, District Judge.

DYER, Circuit Judge:

The harbor tug M/V TIDE LAND was made fast to the M/V VALLEY VOYAGER during underway refueling of the latter, after which the TIDE LAND was to return the fueling flat to New Orleans. While negotiating a bend in the Mississippi River, the TIDE LAND foundered and sank. The District Court found both vessels at fault and awarded one-half damages to each party with interest from the date of the judgment.[1] Both sides appeal.

Chitty, as owner of the TIDE LAND, contends that the District Court erred in finding the TIDE LAND at fault and abused its discretion in awarding interest from the date of the interlocutory jugment rather than the date of the accident. Mississippi Valley Barge Line Company, owner of the VALLEY VOYAGER, contends that the District Court erred in failing to find the TIDE LAND unseaworthy and in finding the VALLEY VOYAGER at fault due to improper speed and maneuvers and failure to keep the TIDE LAND under proper observation. Finding the District Court's decision to be fully supported by the record, we affirm.

For the most part the facts are not in dispute and may be briefly summarized.[2] Early in the morning of August 17, 1964, the VALLEY VOYAGER got underway upriver pushing a northbound tow of 24 barges, and at about the same time the TIDE LAND got underway enroute downriver to pick up the fueling flat which had been previously delivered to the VOYAGER by another tug. The two man crew of the TIDE LAND, a diesel propelled pushboat of 446 rated horsepower, 50 feet in deck length and 16½ feet in beam, of 38 gross and 26 net tons, consisted of Captain Billiot, her master for four years, and Scott, her deckhand/cook for four months. The VALLEY VOYAGER, a 5200 horsepower pushboat 185 feet in length and 45 feet in beam of 1,103 gross and 750 net tons, had Captain Crader on watch and at the controls.

Following radio contact and sighting of the VALLEY VOYAGER, Captain Billiot continued downstream, rounded up astern of the VALLEY VOYAGER and proceeded to moor the starboard side of the TIDE LAND to the port side of the VOYAGER, the fuel flat having been tied off to the starboard side of the VOYAGER. The TIDE LAND was to thus

---

1. Chitty v. M/V Valley Voyager, E.D.La. 1968, 284 F.Supp. 297.

2. *See id.* at 297–302.

accompany the VOYAGER until underway fueling was complete, then remove and return the fuel flat. The decision to tie up alongside the VALLEY VOYAGER was entirely Captain Billiot's to make, and the mooring was attended to by Mr. Scott, utilizing a new single six inch manila line on both the bow and stern. The TIDE LAND was tied flush alongside and about midship of the VALLEY VOYAGER, with the deck levels of each at about the same height and the VALLEY VOYAGER overlapping the smaller TIDE LAND's stern by some 40 feet. Although Captain Crader of the VALLEY VOYAGER had the right to direct the TIDE LAND not to tie off but to follow the VOYAGER upstream, he permitted Captain Billiot to tie off and approved the location of the TIDE LAND and alignment of lines as proper and customary.

With the TIDE LAND alongside, the flotilla proceeded upriver under the overall navigational command of Captain Crader. Captain Crader assumed that the TIDE LAND would not use her own propulsion, since the VALLEY VOYAGER would furnish all propulsion and steering, as was customary. The TIDE LAND continued to be manned by her own crew, with Captain Billiot holding her rudder amidship and using little propeller power, although he kept her engine slow ahead to prevent clutch damage.

After passing three sand dredges at reduced speed, Captain Crader increased the VALLEY VOYAGER's engine speed to full ahead and continued upriver toward Twelve Mile Point. With the flotilla approximately in midriver, a southbound tow was sighted coming around Twelve Mile Point. Captain Crader reduced his engine speed, and following an exchange of signals a starboard-to-starboard passing was effected without incident. Captain Crader then placed his engines full ahead and began steering the tow around Twelve Mile Point.

Both Captain Crader and Captain Billiot were aware of the method by which a towboat such as the VALLEY VOYAGER steers a push tow around a bend. Every push tow has an imaginary "pivot point" on which the tow swings while making a turn, its location depending upon the size and makeup of the tow. In maneuvering around a bend to the right, the head of the tow swings laterally to starboard and the stern, including the towboat, swings laterally to port. Both Captain Billiot and Captain Crader were aware that when the VALLEY VOYAGER began steering the tow to the right around Twelve Mile Point, the port side of the TIDE LAND would be exposed to and pushed laterally through the water. Such did indeed occur, with the TIDE LAND being breasted (driven sideways) through the water throughout her length when the port side of the VALLEY VOYAGER pushed flush against the starboard side of the much smaller TIDE LAND.

The force of the VALLEY VOYAGER driving the TIDE LAND sideways caused the latter to list to port and to scoop water over her small freeboard and eight inch bulwark. The water rushed through the open engine room and galley doors and instantly found its way through the engine grating into the void hull. As the TIDE LAND was sinking, Captain Billiot sounded two short rapid whistle blasts and flashed his searchlight. Scott, the deckhand, jumped to the deck of the VALLEY VOYAGER, and Captain Billiot came out of the TIDE LAND's pilot house and climbed up on her rail. Before Captain Billiot could board the VALLEY VOYAGER the TIDE LAND rolled over, her lines severing under the force, and sank in 120 feet of water, with Captain Billiot having to jump in the water and swim to shore.

The District Court found that the speed of the VALLEY VOYAGER in negotiating Twelve Mile Point was immoderate under the existing circumstances and that Captain Crader was negligent in failing to keep the TIDE LAND under proper observation. The Court also found that the weight of

the evidence was insufficient to establish the TIDE LAND as unseaworthy, the vessel having undergone modifications affecting her stability shortly before the accident but no stability tests or expert inspections having been made. Additionally, the District Court found Captain Billiot to have been negligent in failing to warn the VALLEY VOYAGER of the TIDE LAND's peril despite ample opportunity to do so, and in failing to take proper helm action in order to correct the TIDE LAND's list and avert the catastrophe. Because of this mutual fault, the Court gave one-half damages to each party, with interest from the date of the interlocutory judgment.

■ Preliminarily we dispose of Mississippi Valley's contention that the District Court erred in failing to find the TIDE LAND unseaworthy. The evidence established that the vessel had undergone structural changes by being converted from two to three deck levels shortly before her ill-fated final voyage, and that the conversion was made by Chitty, the owner, without the benefit of professionally prepared plans. However, no stability tests were made on the vessel nor were mathematical calculations made with regard to the effect of the changes upon the vessel's stability. The District Court concluded that on the basis of the weight of the evidence presented it would not be proper to conclude that the TIDE LAND was unseaworthy. Due to the speculative nature of the evidence, we agree. Mississippi Valley contends that because the TIDE LAND had undergone similar trips in the past, her failure to withstand being broached through the water by the VALLEY VOYAGER following the modifications to her design constituted a "classic case" of unseaworthiness under the rule established in Walker v. Harris, 5 Cir. 1964, 335 F.2d 185, cert. denied, 1964, 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342. We disagree. In view of the immoderate speed of the VALLEY VOYAGER, the unsuccessful maneuver through Twelve Mile Point could not be said to have occurred under similar conditions as in past passages or under apparently normal conditions.

■ The District Court's finding that the speed of the VALLEY VOYAGER was immoderate under the existing conditions is not "clearly erroneous," Rule 52, Fed.R.Civ.P.; McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; Roberts v. Echternach, 5 Cir. 1962, 302 F.2d 370, 373; Compania Anonima Venezolana De Nav. v. A. J. Perez Exp. Co., 5 Cir. 1962, 303 F.2d 692, 694, and is therefore binding on this Court. Based on the reported average speed of nine miles per hour including five minutes' full speed preceding the accident, the District Court was fully justified in rejecting Captain Crader's estimate of the VALLEY VOYAGER's speed at eight or nine miles per hour and concluding that the VOYAGER was traveling in excess of nine miles per hour, which certainly was immoderate under the circumstances.

■ We agree with the District Court's finding that Captain Billiot, by failure to warn the VALLEY VOYAGER of its excessive speed, was negligent. Chitty argues that the accident occurred with so little warning that it was unforeseeable, but we need point to no more than the five minutes' full speed of the VALLEY VOYAGER and Billiot's knowledge of what could be expected 'round the bend to indicate the speciousness of this contention.

■ Chitty also argues that once the turning maneuver was begun and the TIDE LAND began to list, there was nothing Captain Billiot could do through action at the helm to avert the accident. Chitty argues that because of the greater relative size of the VALLEY VOYAGER, the TIDE LAND was powerless, attributing the District Court's contrary conclusion to Captain Billiot's having "irritated" the Trial Judge. We need give this little pause. The record is replete with expert testimony by Captain Bach-

rach to the effect that the TIDE LAND's list was accentuated by friction from the also-listing VALLEY VOYAGER and that even one inch of slack in the lines securing the TIDE LAND to the VOYAGER would have eased the friction sufficiently to allow the TIDE LAND to right itself. Captain Bachrach testified that the TIDE LAND through proper rudder action probably could have averted the catastrophe by exerting force on the lines even had double lines secured her to the VOYAGER rather than the single lines which in fact did. Billiot admitted that he took no action of this type whatsoever.

This same testimony is fatal to Mississippi Valley's contention that even assuming the VALLEY VOYAGER failed to properly fulfill its duty to keep the TIDE LAND under proper observation, there were no steps which could be taken to relieve the TIDE LAND's difficulties following their revelation. Mississippi Valley complains that although the District Court found that the VALLEY VOYAGER failed to utilize proper observation or take "proper steps to avert the catastrophe," the Court suggested no "proper steps" it should have taken. Yet Mississippi Valley attributes negligence to Captain Billiot in failing to use the TIDE LAND's rudder to get a few inches of clearance. We think it obvious the "proper steps" the VALLEY VOYAGER could have taken. The VOYAGER had a rudder too.

We disagree with Chitty that this case was proper for application of the principle of condemning the more culpable vessel, *e. g.,* Compania de Maderas de Caibarien, S. A. v. The Queenston Heights, 5 Cir. 1955, 220 F.2d 120, for it appears clear to us that this is a mutual fault collision case. Neither do we find an abuse of discretion in awarding interest from the date of the interlocutory judgment rather than the date of the accident, for the same reason. *See* Afran Transport Co. v. The Bergechief, 2 Cir. 1960, 285 F.2d 119, 120.

Affirmed.