**PETERSEN TOWING CORP. et al.,
Plaintiffs,**

v.

**CAPT. ABRAMS, INC., et al.,
TUG NORWICH,
Defendants.**

**No. 74 C 1692.**

United States District Court,
E. D. New York.

Jan. 29, 1975.

---

Bigham, Englar, Jones & Houston, New York City, for plaintiffs; J. Bond Smith, Jr., New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants; Gordon W. Paulsen, New York City, of counsel.

BRUCHHAUSEN, District Judge.

The defendant moves for an order pursuant to Rule C(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims to the Rules of Civil Procedure for the United States District Courts, quashing the arrest of the Tug Norwich, on December 3, 1974, and directing the plaintiff to pay certain monetary damages for lost operation of said Tug Norwich, and for costs and expenses.

The plaintiffs suit is for breach of an alleged charter agreement, and for the alleged cost of repairs to the Tug. They claim to be maritime lienors of the Tug upon the grounds of a breach of the charter party, also for repairs made, cash advanced for repairs, and general renovation of the Tug. The lien of the plaintiffs was perfected when they caused the Tug to be seized, pursuant to a warrant of arrest which was perfected by a deputy marshal on December 3, 1974. It follows that plaintiffs' maritime lien must arise from either or both of those claims.

The affidavit of Tredwell Thomas Abrams, sworn to the 23rd day of December 1974, states, in paragraph 5:

"Plaintiff does not have an enforceable maritime lien within the meaning of Rule C(1) in that plaintiff does not constitute a 'repairman' as contemplated by that Rule. Plaintiff did not perform the actual repairs to the Tug Norwich but as 'partner' of the defendant simply forwarded monies for repairs that were performed by other parties. Furthermore, the alleged charter upon which plaintiff is suing is not valid and thus cannot support an action in rem."

The affidavit of Howard Petersen, sworn to the 30th day of December, 1974 in opposition thereto, states that he is an officer of the plaintiff corporation,

**1168**

that during March, 1974 a business arrangement was contemplated by and between the parties, that the defendants contribution was to be the Norwich, that prior to the consummation of the business arrangement, it was discovered that the tug was in need of substantial repair, that another agreement was made by the corporate plaintiffs, Petersen Towing Corp., and Long Island Towing Corp. with the defendant, Capt. Abrams, Inc., to make all necessary repairs to the Norwich, that he, Petersen was in complete charge of the repairs, determined the extent thereof, purchased parts and materials, supervised the work of others to the tug, that he expended substantial sums of money for the repairs, that his expertise increased the value of the Norwich from an insured value of $60,000.00 to $167,000.00, that he relied upon the credit of the vessel and not on the credit of the defendants, that no payments have been forthcoming from the defendants for the repairs, although demanded, that no formal contract was ever executed, and as a consequence a bareboat charter was entered into on July 29, 1974 between Petersen Towing Corp., as charterer and Capt. Abrams, Inc., as owner, that the intention of the parties was complete as expressed in the letter of July 29, 1974 which was counter-signed by Capt. Tredwell Thomas Abrams, Pres. of Capt. Abrams, Inc., that the Norwich was delivered to the plaintiffs pursuant to the said letter, and finally, the Norwich was withdrawn from service on September 16, 1974, all to the detriment of the charterer.

■ The governing statute, 46 U.S.C.A. § 971 states:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem * * *."

The Court must first decide whether the plaintiffs have a maritime lien, pursuant to the statute.

The movant urges that a repairman's lien only arises in favor of a person who actually "furnishes" repairs to a vessel and that the funds, expended for repairs, were in accordance with a business arrangement between plaintiff and defendant, and that each partner would draw money out of the receipts received from towing operations. The movant asserts that the plaintiffs were partners or co-venturers, and, therefore, not in the category of a repairman to quality as a lienor. The case of Bankers Trust Co. v. Hudson River Day Line, 2 Cir., 93 F.2d 457 is cited in support of the movant's position. That case furnishes absolutely no support to the movants, the defendants. The facts therein indicate that oil deliveries pursuant to contract were to be delivered directly to the vessels, and the supplier relied upon the credit of each vessel receiving the oil. Thereafter the oil was delivered in deviation of the contract to barges from which the vessels were fueled. The Court held that this change of practice voided any maritime lien. The facts of the case at bar are wholly different, and the rules of law correctly stated in the Bankers Trust case do no apply to this case.

This case is similar to Compagnia Maritima La Empresa, S. A. v. Pickard, 5 Cir., 320 F.2d 829. In that case, the parties entered into a co-venture agreement, where by the sale of a vessel could be turned quickly into a substantial profit. It was agreed that Pickard was to supply care and maintenance to the vessel, overhaul it, and put the ship in attractive condition.

The Court held in part at page 833:

"Second, and here more important, Pickard for his own personal account furnished extensive repairs, services, supplies, etc. to the vessel. To perform them, he used his own employees whose wages, withholding taxes, etc.

were paid by him. Thus, Packard, authorized by the owner to arrange for repairs, employed Pickard, a ship repairman, to make them. As was true of a charterer with a simultaneous dual role of ship repairer in Roberts v. Echternach, 5 Cir., 1962, 302 F.2d 370, Pickard is entitled to a lien for such services coming within the statute when procured and furnished directly by him. The same is true as to those supplied by contractors at his direction and as to which there is no doubt that the circumstances gave rise to a maritime lien enforceable by him. * * * ."

See also, The Puritan, 1 Cir., 258 F. 271 and The Gloucester, 1 Cir., 285 F. 579.

Pickard, pursuant to his arrangement looked ultimately to the vessel from which the profit would be realized.

The plaintiffs here, invested substantial personal sums into the Norwich enhancing its value some $107,000.00, and undoubtedly relied upon the credit of the tug rather than on the credit of the defendants. The profits, if any, were to be forthcoming from the tug.

It follows, therefore, pursuant to the authority of Pickard, supra, that the plaintiffs are entitled to the position of a maritime lienor as a repairman.

■ Secondly, the defendants-claimants urge that no charter agreement was ever executed. The letter, dated July 29, 1974, Exhibit 1, from the plaintiffs to the defendants was merely an intent to enter into a charter agreement.

The said letter undoubtedly was an offer from the plaintiffs to the defendants to bareboat charter the Norwich. The letter concerns, "Charter Of Tug Norwich" typed toward the top of the letter. The body of the letter indicates the period of this charter, August 1, 1974 and terminating August 1, 1975. The responsibility of the charterer and claimant are mentioned in the second paragraph, an option to extend the charter is given the charterer in the third paragraph, and the agreed rate per year is in the fourth paragraph. Finally, if the offer was acceptable, the defendant was to sign above the line in the lower left corner of the letter. The signature of Tredwell Abrams, Pres. of the defendant corporation, appears above this line. It is urged that this letter of intent was merely executory and preliminary to entering a more formal contract.

It appears that this document contains all the essential details of a contract, and the signature of the defendant thereon indicates that the agreement was satisfactory to both sides.

The defendant urges that a maritime lien does not attach to an executory contract, citing Rainbow Line, Inc. v. M/V Tequila, 480 F.2d 1024 (1973) (Cir. 2). In its brief at page 6, the defendant quotes in part from footnote 6 at page 1027:

"There is no lien if the charter party is merely executory. The Saturnus, 250 F. 407, 408 (2 Cir.) cert. denied 247 U.S. 521, 38 S.Ct. 583, 62 L. Ed. 1247 (1918); The Valmar, 38 F. Supp. 618, 620 (T.D.Pa.1941). . . ."

The defendants failed to include the next clause, contained in the said footnote 6, which states:

"but in the present case the vessel had been delivered to the charterer for some ten months and cargoes had been carried. Delivery of the vessel commences the performance of a time charter and removes it from executory status, The Oceano, 148 F. 131, 133 (S.D.N.Y.1906); G. Gilmore & C. Black, The Law of Admiralty, § 9–22 at 521 (1957) . . ."

In the case at bar, the Tug Norwich was delivered to the charterer, on or about August 1, 1974 and then removed from service on September 16, 1974.

It follows, therefore, pursuant to the authority of Rainbow Line, Inc., supra, that the agreement was not executory,

since it was delivered to the charterer who had it in use until September 16, 1974.

The Court concludes that the plaintiffs are entitled to the standing of a maritime lienor.

The arrest of the Tug Norwich is hereby ordered vacated upon the filing of a bond for the amount of its appraised value, determined by William P. Watkins, Esq., designated and appointed by order of this Court dated January 27, 1975, to appraise the value of the said tug.

A further pre-trial conference of this case is hereby scheduled for May 14, 1975 at 10 A.M.

It is so ordered.

## EXHIBIT 1

### PETERSEN TOWING CORP.

Box 217—38 Quaker Path
Stony Brook, L. I., New York   11790

July 29, 1974

Capt. Abrams, Inc.
Main Street
General Delivery
Port Jefferson, N. Y.   11777

Re:  Charter Of Tug NORWICH
Official # 237746

Capt. Tredwell Thomas Abrams:

Please be advised that we intend to bareboat charter your Tug NORWICH for a period of not more than one year commencing August 1, 1974 and terminating August 1, 1975.

We will pay all expenses customarily borne by bareboat charterers and name Petersen Towing Corp. as assured on the insurance policies covering the Tug NORWICH.  We agree that the insured value of the hull is $167,000.00.  We will not, however, be responsible for repair of machinery failure or replacement of components of the Tug NORWICH'S appurtenances and fixtures which fail during the charter period because of latent defects unknown to the charterer.  If, during the charter period the Tug NORWICH should be rendered inoperable because of such a breakdown, this charter will terminate immediately and the Tug NORWICH will become the responsibility of the Capt. Abrams, Inc.

It is understood that the charterer has the option to extend the charter period through one year options at the agreed rate.

The agreed rate per year is $365.00.

Kindly sign both copies and return one copy of this letter at your earliest convenience.

Very truly yours,

(s)  Edith M. Petersen, Pres.

Edith M. Petersen, Pres.
Petersen Towing Corp.

(s)  Tredwell Abrams, Pres.
Capt. Tredwell Thomas Abrams, Pres.
Capt. Abrams, Inc.